HENRIETTA M. MONTGOMERY and JULIANNA J. J. SPENCER, Executrices of MARIA WILLIAMSON, deceased *vs.* LUKE T. WILLIAMSON.

*Jurisdiction of the Orphans' Court—Article 93, sec. 280, of the Code—Act of 1865, ch. 51.*

The appellants, under authority conferred by the will of their testator, sold certain real estate, advertised as containing about one hundred acres, at a specified sum per acre. After the sale, a survey of the land was made, and it was found to contain one hundred and twelve and a half acres. The sale was reported to the Orphans' Court of Baltimore City, the report stating that the survey had been made in the presence and under the direction of the purchaser; the executrices adopted the estimate of the number of acres furnished by this survey. The sale was ratified by the Court, but no deed was made to the purchaser. Some years afterward the executrices having ascertained by another survey, that the tract contained one hundred and twenty-three acres and twenty-six square perches, filed a petition in the Orphans' Court, alleging that they had recently discovered that the estimate of the number of acres in the tract as reported by them was erroneous, and that they were misled by the representations of the purchaser; they prayed that the order of ratification of sale might be set aside, that they might be allowed to amend their report so as to make it correspond with the truth of the matter, and that the sale might be ratified according to the amended report. The purchaser answered the petition, admitting some of the allegations and denying others. The Orphans' Court dismissed the petition for want of jurisdiction. On appeal it was HELD:

That under Art. 93, sec. 280, of the Code, as modified and extended by the Act of 1865, ch. 51, the Orphans' Court had the power to decree relief; but whether the order of ratification should be disturbed would depend upon the evidence that might be produced by the petitioners, as they would have to establish the facts stated, to entitle them to the relief asked.

Where the order of ratification of a sale made and reported by executrices to the Orphans' Court, has been obtained by deceit and imposition, or procured by honest mistake, the Court has the power of revocation and correction, provided the application be made within a reasonable time and under proper circumstances.

APPEAL from the Orphans' Court of Baltimore City.

The appellants, as executrices of the last will and testament of Maria Williamson, deceased, filed a petition under oath in the Orphans' Court of Baltimore City, on the 20th of March, 1872, alleging that under authority conferred by the said will, they sold by public auction, on or about the 9th of June, 1866, to the appellee, a portion of a tract of land called "Lexington," belonging to their testatrix at the time of her death, at the price of one hundred and seventy-five dollars an acre; and that the sale was duly ratified by the Orphans' Court, in August of the same year; that in the advertisement of the property, it was described in a loose and inexact manner; that after the sale the land was surveyed and a plat of it made under the direction of the purchaser, and in the report of the sale, the petitioners adopted the plat and description and the estimate of the number of acres contained in said tract, which were furnished to them by the purchaser. The petition further stated, that within a few weeks past the petitioners had caused a survey to be made of the tract of land sold by them, and that they had thereby discovered that the estimate of the number of acres in said tract, furnished to them by the purchaser, as the basis of their report of the sale, was erroneous; that by their survey it was ascertained that the tract contained one hundred and twenty-three acres and twenty-six square perches, instead of one hundred and twelve and a half acres, as stated in the report. The petitioners averred that they were misled in the matter by trusting to the representations of the purchaser, under whose direction and by whose procurement the former survey and estimate were made, and that they did not discover that his representations were erroneous until the survey was made, at their instance, a few weeks before the filing of the petition; and that said erroneous estimate was greatly to the injury of the petitioners, and would operate

as a fraud upon them, unless corrected by the Court. The petitioners, therefore, prayed that the order of ratification of sale might be set aside, that they might be allowed to amend their report so as to make it correspond with the truth of the matter, and that the sale might be ratified according to the amended report.

The purchaser answered under oath, denying that the survey of the land, or the plat thereof, was made under his direction, or that he furnished the petitioners with any plat or description of the land, or any estimate of the number of acres contained therein; he also denied all fraud and misrepresentation, or that he misled the petitioners in any way, or that he had anything more to do with the survey made shortly after the sale, than the petitioners had, other than the being present thereat. The respondent further set forth the fact of the sale, years before, of all his interest in the property, and denied the power or jurisdiction of the Orphans' Court to grant the relief prayed.

The Court, on the 16th July, 1872, passed an order dismissing the petition for want of jurisdiction. From this order the petitioners appealed.

The cause was submitted on briefs to BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Wm. Shepard Bryan* and *Jervis Spencer*, for the appellants.

The question of jurisdiction must be decided by what is stated in the petition. The petition states, that Williamson has about eleven acres of the petitioners' land, which he has not paid for, and that the error in the reported measurement was produced by representations made by him incorrect in point of fact. The justice and equity of requiring him to pay for the land are apparent enough. In a case where the vendor misrepresents the acreage, the

purchaser is entitled to a compensation for the deficiency. *Hill vs. Buckley,* 17 *Vesey,* 394. And no one can doubt that the seller is entitled to the same justice.

By Article 93, section 280, of the Code, the jurisdiction of the Orphans' Court in these matters is the same as that of a Court of Equity. Their power to set aside a ratification of a sale is a necessary consequence of the power to ratify. *Raborg vs. Hammond,* 2. *H. & Gill,* 51.

The lapse of time cannot avail Williamson as a defence against a mistake produced by his own representations. *Scott vs. Fox,* 14 *Md ,* 388, is an instance where an error by the Orphans' Court was corrected after the lapse of seven years. *Ringgold vs. Brown,* 4 *H. & McH.,* 498; and *Hutchins vs. Brown,* 4 *H. & McH.,* 498, are instances where proceedings at law were corrected after many years. In this case the petitioners proceeded within a few weeks after the discovery of the fraud. Certainly no laches could be imputed before such discovery. Even a statute of limitations would not begin to run in case of fraud or mistake, before the discovery. *Story's Eq. Juris ,* sec. 1521a. *Brooksbank vs. Smith,* 2 *Y. & Coll.,* 58.

The legal title to the property has never vested in Williamson, as he has never obtained a deed. *Neely vs. Hughes,* 10 *G. & J.,* 7. If any person has dealt with him since the sale, such person has necessarily had notice of the inchoate character of his title. But the object of this proceeding is to deal with Williamson, and the rights of other persons can be considered when their claims arise and are sustained by proof.

*Benjamin F. Horwitz,* for the appellee.

The Orphans' Court has no power or jurisdiction to grant the relief prayed. "They are tribunals confessedly special and limited in their jurisdiction, without any constructive or incidental power." *Art.* 93, *sec.* 252, *of the Code; Townsend vs. Brooke,* 9 *Gill,* 90 ; *Scott vs. Burch,*

6 *H. & J.*, 79; *Taylor vs. Bruscup*, 27 *Md.*, 219; *Broders vs. Thompson*, 2 *H. & G.*, 126; *Bowie vs. Ghiselin*, 30 *Md.*, 556; *State vs. Warren, et al.*, 28 *Md.*, 355; *Eichelberger, Ex'r., vs. Hawthorne*, 33 *Md.*, 596.

None of the above cases relate to the powers of the Orphans' Courts over the real estate of the testator; in reference to which their powers and jurisdiction are even more limited and circumscribed. In the language of this Court in *Hayden vs. Burch*, 9 *Gill*, 79: "Orphans' Courts have nothing to do with real estate." They cannot order the sale of realty. In this case, as in all such cases, the power to sell is derived from the will of the testatrix. Prior to the Act of 1831, ch. 31, secs. 10 and 11, (codified in Act 93, sec. 280, of the Code, which was repealed and re-enacted by Act of 1865, ch. 51,) the Orphans' Court had no power to ratify sales of real estate made by executors under powers contained in wills; and by the Act of 1865, ch. 162, power was for the first time given to Orphans' Courts to order a re-sale of realty when the purchaser failed to comply with the terms of sale. It is, therefore, seen how slow and guarded the Legislature has been in giving these mere *probate Courts* any jurisdiction, however small, over real estate. We look in vain for any such extensive and unlimited power as that claimed for them by the appellants in this case. Powers *much more extended* than those possessed by a Court of Equity—a Court of general and not limited and special jurisdiction.

The prayer of the petition is, to set aside a decree of final ratification passed six years and a half ago. If such relief were sought in a Court of Equity, it could only be by bill of review, for after the lapse of the term, the order or decree is enrolled as part of the records of the Court and is final. A bill of review can be brought but in two cases—

1st. For error of law appearing on the face of the proceedings. 2d. For new matter discovered since the decree.

There is no pretence of the former ground in this case, and in order to maintain the latter, two things are necessary :

1st. To obtain the leave of the Court to file such a bill before filing it; as its allowance is a discretionary matter in the Court, and not a matter of absolute right in the complainant.

2d. That the new matter must be "such as the party, by the use of reasonable diligence, could not have known; for, if there be any laches or negligence in this respect, that destroys the title to relief." *Burch, et al., vs. Scott,* 1 *G. & J.,* 425, 426; *Hollingsworth vs. McDonald,* 2 *H. & J.,* 237, 238; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455; *Story's Eq. Pleadings, secs.* 404 and 414.

Treating this petition then as a bill of review filed in a Court of Equity.—First, no leave was obtained to file it; and secondly, there was certainly very great laches or negligence in permitting six years to elapse before having a survey made of a tract of land which was advertised "to be surveyed," and was sold by the acre.

Again, such a bill cannot in this State be filed more than nine months after the date of the decree or order; the lapse of that time has been decided to be an insuperable objection to the granting of any such relief. *Berrett vs. Oliver,* 7 *G. & J.,* 207; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455. A Court of Equity even, would, therefore, have no power to grant the relief prayed in this case.

ALVEY, J., delivered the opinion of the Court.

The petition in this case was dismissed by the Orphans' Court, as stated in the order, for want of jurisdiction in the premises. No testimony was heard, in reference to the controverted facts; and the only question presented on this appeal is, whether the Orphans' Court had jurisdiction to hear and determine the subject-matter of the petition, assuming the facts to be true, as therein stated.

The contract of sale and purchase, as evidenced by the report of the executrices, required the purchaser to pay one hundred and seventy-five dollars per acre, "for every acre the said tract of land contained." The report further states, that, since the sale, the land had been surveyed, "in the presence and under the direction of the purchaser," and was found to contain one hundred and twelve and a half acres, as by the report of the surveyor was shown. It is now alleged by the petitioners that they have recently discovered that there was an error in the survey, and that instead of one hundred and twelve and a half acres, as was formerly supposed, the tract in truth contains one hundred and twenty-three acres and twenty-six square perches; and that this fact they can and are ready to prove and demonstrate. They, therefore, ask that the order of ratification be opened, and that they be allowed to amend their report of sale, so as to make the same conform to the truth in the particulars mentioned.

The power of the Orphans' Court over the subject-matter is derived from section 280 of Article 93 of the Code, as slightly modified and extended by the Act of 1865, chapter 51. By the statute, the executor, in the cases contemplated, is bound to account to the Orphans' Court for the proceeds of the sale of the real estate sold by him, in the same manner as for the proceeds of sale of the personal estate, and his bond is declared to be answerable for such proceeds of the real estate "to the same extent as if it were personal estate in his hands;" and it is also provided that such sale of real estate "shall not be valid or effectual, unless ratified and confirmed by the Orphans' Court," after notice given in the manner practised in cases of sales of land, under decrees in equity. In this case, though the sale as reported was finally ratified, no deed has yet been made to the purchaser.

The great object in conferring this power of ratification upon the Orphans' Court, was, doubtless, the protection

of the estate, the prevention of fraud and collusion, and
to secure entire fairness in the sale; and seeing that the
entire proceeds of sale are to be accounted for to the Or-
phans' Court for distribution under their direction, it is
difficult to perceive why that tribunal has not jurisdic-
tion to aid and enforce that duty. If it be true that the
proceeds of eleven acres of the land sold remain to be
accounted for, why may not the Orphans' Court compel
the executrices to account, and if the previous order of
ratification, founded upon an erroneous report, as now
alleged, forms an impediment to the performance of such
duty by the executrices, why should the Court not re-
move it, by rescinding the order, and thus protect the
estate, and the rights of those interested in its distribu-
tion? The purchaser certainly acquired no right under
the order to be relieved from the obligation of his contract
to pay a certain sum "for every acre the said tract of
land contained;" and if this be so, in deference to whose
right has the order become wholly irrevocable, no matter
upon what error founded, nor by whose conduct the error
was produced? Under the terms of the contract, the or-
der of ratification did not operate to preclude the right to
inquire into the quantity of the land sold, and if the
Court and the executrices acted upon an erroneous suppo-
sition as to the number of acres contained in the tract, it
is not too late to have the error corrected, by rescinding
the order of ratification, and allowing the report of sale
to be amended. If this were a proceeding in a Court of
Equity, the remedy would be plain, and there is no good
reason why it should be less so in the Orphans' Court,
where the mode of proceeding is less formal and technical
than in a Court of Equity.

It seems to have been supposed that as there is no ex-
press authority to be found in the statute, the rescinding
of the order of ratification would be the exercise of con-
structive authority which the Court is forbidden to exer-

Montgomery and Spencer, Ex'es, *vs.* Williamson.

cise. But this objection is fully answered by the Court of Appeals, in the case of *Raborg vs. Hammond,* 2 *H. & G.,* 42, 51, in considering the power of the Orphans' Court to revoke letters of administration, when improvidently granted, and where to the exercise of the power, the same objection was urged as to the jurisdiction in this case. The Court said: " But to this it may be answered that we deem the power of revocation, under such circumstances, as necessarily inherent in the Orphans' Courts, and a part and of the essence of the power delegated to them, of granting administration. In confirmation of which, see 3 *Bac. Ab.,* 50, where speaking of the ecclesiastical tribunals of England, in reference to this power, it is stated that "it would be absurd to allow a Court jurisdiction herein, and at the same time deprive them of the liberty of vacating and setting aside an act of their own, which was obtained from them by deceit and imposition." Whether the order of ratification was obtained by deceit and imposition is quite immaterial; if by honest mistake, the power of revocation and correction equally exists, provided the application for its exercise be made within a reasonable time, and under proper circumstances.

Whether the order of ratification should be disturbed, will, of course, depend upon the evidence that may be produced by the petitioners, as it will be incumbent upon them to establish the facts stated, in order to entitle them to have the order vacated or opened for an amendment of their report.

> *Order reversed*
> *and cause remanded.*