HOWARD MUNNIKHUYSEN *vs.* ADAM R. MAGRAW. MARY CARSON *vs.* SAME. ANNIE CARSON, GEORGIE P. CARSON and SUSAN CARSON *vs.* SAME. HOWARD MUNNIKHUYSEN, and others *vs.* SAME.

*Practice in the Orphans' Court—Petitions to have an Order annulling a previous Order admitting a Will to Probate, Set Aside on the ground of Fraud in its Procurement— Jurisdiction of the Orphans' Court—Administration Pendente Lite.*

Petitions were filed by the appellants (not within thirty days after having first learned of the facts therein stated,) in the Orphans' Court of Cecil County, each asking the Court to set aside and annul a former order of the Court passed on the 14th October, 1873, whereby the order of that Court previously passed, admitting the will of E. M. to probate, was annulled, the will set aside and the letters testamentary of the appellee were revoked. The petitions under oath alleged, by various and specific charges, that the order sought to be set aside and annulled was procured by fraud, collusion and deceit practiced upon the Circuit Court for Cecil County and the jury in that Court, and upon the Orphans' Court, whereby a verdict upon certain issues of fact affecting the will of E. M. was procured without evidence and by consent and collusion, contrary to the facts as they existed, by which means the Orphans' Court was imposed upon, and was induced to pass the order of the 14th October, 1873. The appellee by his answer under oath denied the allegations of the petitions and averred other facts and circumstances inconsistent therewith. When the case came on for trial the petitioners offered to prove by competent testimony the allegations of their petitions, the appellee excepted, and as if by demurrer, to the admissibility and competency of the testimony, on the ground of want of jurisdiction in the Orphans' Court: 1. Because the petitions were not filed within thirty days after the 13th September, 1880. 2. Because H. S. M. and E. R., who were of the caveators in the proceedings in the Circuit Court, were not made parties to the proceeding in the Orphans' Court. 3. Because the Orphans' Court had no jurisdiction to set aside their judgment of the 14th

Munnikhuysen, Carson, *et al. vs.* Magraw.

October, 1873, upon the case made by the petitioners, because it was based on the verdict rendered in the Circuit Court, which, not being set aside by that Court, remained of binding force on the Orphans' Court. It was further objected, by the appellee, (admitting the Orphans' Court had jurisdiction,) that the petitioner H. M. had no standing to assail the order of the 14th October, 1873, because his only interest was that of creditor of the estate, and he had no interest or rights in the question of the validity or invalidity of the will; and further, that in this case the petitioners should be held to the strictest rules of pleading and the same test of sufficiency should be applied to their petitions as is applied to a bill for an injunction where demurrer is interposed. The Orphans' Court dismissed, without hearing the proffered evidence, the petitions of the appellants. HELD:

1st. That, this case being considered as if on demurrer without reference to the answer, the Orphans' Court on the allegations of the petitions, had jurisdiction to hear and determine their complaint; that the limit of thirty days within which to begin proceedings, (by analogy to the period within which appeals are to be taken,) did not apply to this case, in which fraud of a gross character was alleged; and a reasonable time for necessary investigations and preparations was allowable to the petitioners.

2nd. That the fact that H. S. M. and E. R., non-residents of the State, were not made parties to the proceeding, did not affect the jurisdiction of the Court, as they were original parties in the proceedings assailed, caveators, and applied for the issues to the Circuit Court, and under the circumstances were not entitled to especial notice, and should be held to be in Court to defend the proceeding instituted to set aside the judgment they had procured.

3rd. That the jurisdiction of the Orphans' Court to act in this case was not affected by the proceedings in the Circuit Court, as the verdict contemplated by the law was not such a verdict as was alleged to have been rendered in that Court, without any evidence whatever upon any of the matters at issue, but by simple consent of parties charged to have colluded to procure it, and without any actual contest; and if the verdict was procured in the way alleged, it was void and not binding on the Orphans' Court, and that Court had a right to enquire into the alleged fraud.

4th. That H. M. had no standing to assail the order of the 14th October, 1873, if he were only a creditor of the estate, as he should have some interest under the will to give him standing in Court to

Munnikhuysen, Carson, *et al. vs.* Magraw.

contest or defend it, but as it did not appear from his petition that he had renounced the trust to him under the will, he should be held to have such an interest as entitled him to appear and contest the will, so far as appeared on this appeal. If it should appear hereafter, that H. M. had renounced the trust, and divested himself of the title, &c., it will be the duty of the Orphans' Court to dismiss his petition; that the other petitioners being legatees under the will, had standing in Court.

5th. That the strict rules of pleading practiced in other Courts should not be applied in the Orphans' Court, and pleadings should be taken in that Court to import what common sense would understand by them; that enough was stated in the petitions to entitle the petitioners to a hearing and to warrant the relief prayed for, if the Court should find the allegations sustained by proof.

The appellants petitioned the Orphans' Court for the appointment of an administrator *pendente lite.* HELD:

That the same was properly dismissed, as the Orphans' Court was not authorized by Art. 93, sec. 68, to appoint an administrator *pendente lite* in this matter, as the will of E. M. was not before the Court on contest.

APPEALS from the Orphans' Court of Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, ALVEY, IRVING, RITCHIE and MAGRUDER, J.

*Thomas J. McKaig, Jr.* and *William M. Merrick,* for the appellants.

The right of the Orphans' Court to annul and rescind an order obtained by fraud and deceit, is no longer an open question in Maryland. *Montgomery and Spencer, Ex'rs vs. Williamson,* 37 *Md.,* 421; *Raborg vs. Hammond,* 2 *H. & Gill,* 42; *Shultz vs. Houck, Ex'r,* 29 *Md.,* 24; 3 *Redfield on Wills,* 57; *Duchess of Kingston's Case,* 3 *Smith's Leading Cases,* 615.

It can hardly be seriously contended that the jurisdiction of the Orphans' Court to grant the relief prayed by the petitioners, can in any manner be affected by the fact that the judgment of that Court was based upon what purported to be a verdict of a jury in the Circuit Court. The language used by this Court in the case of *Warford, et al. vs. Colvin*, 14 *Md.*, 555, conclusively disposes of such a contention.

If it be satisfactorily made to appear to the Orphans' Court that either through mistake or fraud, they were erroneously advised that a trial had actually taken place, when, in point of fact, nothing of the kind had occurred, would that not have abundantly justified them in refusing to set aside the will in question? And if that power existed then, have they not the same right now, when, for the first time, this knowledge is brought home to them?

This proceeding seeks the annulment of the judgment setting aside the will. That judgment was the act of the Orphans' Court, not of the Circuit Court. Can there be a question, therefore, that the application for its revocation is properly made to the former tribunal, especially as this pretended jury trial was "all the while a proceeding within the probate powers of the Orphans' Court." *Pegg, &c. vs. Warford*, 4 *Md.*, 385.

Suppose an immaterial issue be sent to the Circuit Court and found by the jury in favor of the caveator—that verdict would not authorize the Orphans' Court to set aside the will—and if such a judgment was rendered, it would, on appeal, be reversed by this Court. The judgment of the Orphans' Court is a conclusion of law based upon the facts found by the jury. If, therefore, through the action of the parties litigant, the Orphans' Court renders a judgment upon a state of facts never found by the jury, certainly, every consideration of fairness and justice require that when the Court is undeceived, they should, by its

immediate annulment, make reparation to those who have been innocently injured thereby.

Conceding that the doctrine of *laches* is proper to be considered in granting relief in this class of cases, it cannot have any application to the issues involved in these petitions, for the reason that Munnikhuysen's sworn allegation is, that he first became aware of the facts constituting the fraud and collusion on the 13th day of September, 1880—*one month* and some days prior to the filing of his petition; and the Misses Carson allege that their knowledge was simultaneous with the date of their petitions. In cases of fraud, limitations, and by analogy, *laches*, do not run except from the time the fraud is discovered. *Build. Asso. Balt. City No. 2 vs. Grant*, 41 *Md.*, 560.

Even upon the assumption that the petitioners had actual or constructive knowledge prior to this, they would not thereby be barred or deprived of the remedy they are now seeking, especially as they were not parties, but strangers to this judgment, with no right of appeal therefrom. *Claggett, Ex'r vs. Harris*, 11 *Md.*, 381; *Montgomery & Spencer, Ex'rs vs. Williamson*, 37 *Md.*, 42; *Scott vs. Fisher*, 14 *Md.*, 388; *Finncane vs. Gayfore*, 3 *Phellimore*, 405.

Without multiplying authorities on this point, it is sufficient to say that this power in the Orphans' Court is founded upon considerations of right and justice, which address themselves to the judicial mind with exceptional force in all cases of improvident judgments rendered by that Court, more especially in those tainted by fraud. *Hannon vs. The State*, 2 *Gill*, 42; *Negro John, et al. vs. Morton*, 8 *Gill & J.*, 391; *Broderick's Will Case*, 21 *Wallace*, 503; 3 *Redfield on Wills*, 59, *note*.

There is a vital importance in the administration of justice, that the right of all persons wrongfully injured by any judgment of the Orphans' Court to have *it* vacated,

should be expanded rather than contracted, both as to time and completeness of remedy. It is a matter of public notoriety that the Judges of the Orphans' Court throughout this State are plain, simple men, unlearned in the nice subtleties of the law, and especially the character of persons who may easily be imposed upon by designing and unscrupulous litigants ; and the further fact that those who are injured by an unrighteous judgment of that Court are without redress in any other—particularly in a Court of equity, which in similar cases is almost limitless in its remedial jurisdiction—is an unanswerable argument in support of the propriety of vesting in the Orphans' Court the amplest powers for righting its own errors and wrongs, co-equal with its arbitrary and untrammelled opportunities for their commission.

Now, dismissing altogether the question of fraud and collusion, can it be successfully controverted that the act of the three children in setting aside their mother's will by consent, bound themselves and no one else? Upon this point, the case of *Wytcherly vs. Andrews, Law Report*, 2 *Probate and Divorce*, 327, is conclusive, where it is held that "persons not parties to a suit, although cognizant of it, are not bound by a compromise when the decree is by consent." See *sec.* 27, *Art.* 49, *Revised Code; Warford vs. Colvin*, 14 *Md.*, 554.

There is no weight in the contention that by reason of the inability of the petitioners to summon Henry S. Magraw, Samuel F. Rathvon and Emily H., his wife, the Orphans' Court is divested of all jurisdiction in the premises. The allegation in the petitions is that these parties are permanently residing in the State of Kansas, beyond the reach of any process of the Orphans' Court. The only possible way in which they could have been made parties to this proceeding, under the powers of that Court, was by service on them of a writ of summons. *Townshend vs. Brooke*, 9 *Gill*, 91.

Munnikhuysen, Carson, *et al. vs.* Magraw.

Beyond a doubt, this objection comes with a bad grace and questionable propriety from the respondent, Adam R. Magraw. When he consummated the former proceeding and struck down all the rights and interests of the petitioners under this will, by the same parity of reasoning, why were they not necessary parties to that proceeding? Certainly it presented a much stronger case for the application of this principle, if any such exists. It would indeed be a strange anomaly in jurisprudence, if these three heirs could conspire together to commit a fraud of this character on the Orphans' Court, and then, by two of them fleeing beyond the available process of the Court, deprive all persons injured thereby, from obtaining any redress. Its mere statement is its complete refutation.

With regard to the prayer of the petitioners, asking the appointment of an *administrator pendente lite,* the refusal of the Orphans' Court to make such appointment was clearly erroneous. *Sec.* 105, *Art.* 50, *Revised Code; Sec.* 17, *Art.* 50, *Revised Code.*

*John P. Poe, Bradley T. Johnson* and *Alexander Evans,* for the appellee,

I. The Orphans' Court has no jurisdiction to hear and determine the matter of the petitions, and to grant the relief prayed.

*A.* Because Munnikhuysen's petition was not filed within thirty days after the 13th of September, 1880, the date on which the petitioner Munnikhuysen claims that he first learned of the order of the 14th of October, 1873, and of the facts establishing the alleged fraud and collusion, and was therefore filed too late to give the Court jurisdiction to entertain it. *Oliver vs. Palmer,* 11 *G. & J.,* 137; *Berrett vs. Oliver,* 7 *G. & J.,* 207; *Edwards vs. Bruce,* 8 *Md.,* 387; *Stockdale vs. Conaway,* 14 *Md.,* 107; *Schultz vs. Houck,* 29 *Md.,* 26, 27; *Redman vs. Chance,* 32 *Md.,* 52–3.

*B.* Because the caveators, Henry S. Magraw and Emily H. Rathvon, are absolutely indispensable parties to any

proceeding instituted to vacate the order in question. And not being parties to this proceeding, and no attempt having been made to bring them in, the Court is without jurisdiction to act in their absence, and to pass such an order as the petitioners pray, when it is manifest that such order must vitally affect and prejudice their interests and rights. *Spencer vs. Ragan*, 9 *Gill*, 482; *Shields vs. Barrow*, 17 *Howard*, 130; *Barney vs. Baltimore*, 6 *Wall.*, 284-5; *Chesapeake & Ohio Canal Company vs. Blair*, 45 *Md.*, 109; *Crook vs. Brown*, 11 *Md.*, 171; *Walter vs. Riehl*, 38 *Md.*, 215; *Hill vs. Reifsnieder*, 39 *Md.*, 432; *Ward vs. Hellins*, 14 *Md.*, 158; *Lovejoy vs. Ireland*, 17 *Md.*, 625; *Morgan vs. Morgan*, 2 *Wheat.*, 290; *Fletcher vs. Hooper*, 32 *Md.*, 213; *Beall vs. Brown*, 7 *Md.*, 397, 398.

C. Because it appears by the petition of Munnikhuysen and exhibit filed therewith, that issues touching the validity of the pretended will of Mrs. Magraw, were transmitted on the 12th August, 1873, by the Orphans' Court of Cecil County, to the Circuit Court for Cecil County; that on the 26th September, 1873, a verdict was rendered upon said issues in favor of the caveators; that the said verdict was duly certified to the Orphans' Court; that on the 14th October, 1873, the probate of said pretended will was accordingly vacated and annulled, and the letters testamentary previously granted thereon were revoked; and that said verdict has never been impeached, but still stands unchallenged, and in full and absolutely binding force. Upon this state of case, the appellee insists that so long as that verdict stands, the Orphans' Court has no jurisdiction whatever in this proceeding. *Pegg vs. Warford*, 4 *Md.*, 394-396; *Price vs. Taylor*, 21 *Md.*, 362, 363.

The finding of the jury has not been impeached or disturbed. It is, therefore, absolutely binding on the Orphans' Court, and until it is set aside by the Circuit

Court, the Orphans' Court has no power to disregard or annul it. If the Circuit Court erred in directing the jury to find a verdict for the caveators, or if the parties were guilty of any impropriety, misconduct, fraud, concealment or collusion, the Circuit Court has the power to investigate. the matter and apply the proper remedy ; but no precedent or authority can be found for the proposition that the Orphans' Court can inquire into the regularity of a verdict of a Court of law upon issues duly transmitted, and set it aside after the lapse of many years upon any grounds whatever.

The jurisdiction of our Orphans' Courts is special and limited, and they have no constructive or incidental powers ; nor can they, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law. (*Code, Art.* 93, *sec.* 252 ; *Gunther vs. State*, 31 *Md.*, 31.) This principle is well established and strictly enforced.

For these reasons, all of which are abundantly sustained by authority, it is submitted on behalf of the appellee, that the exception to the jurisdiction of the Orphans' Court in this case is well taken.

II. If the Court has jurisdiction, the petitions disclose no sufficient ground for exercising it ; and, therefore, the order of the Court below should be affirmed.

*A.* Because the petitioner, Munnikhuysen, has no standing in Court to assail the order of the 14th of October, 1873. The petitioner, Munnikhuysen, claims no interest or rights under the pretended will, and so far as he is concerned, the question of its validity or invalidity is a question in which he has no concern whatever. *Hoffar vs. Stonestreet*, 6 *Md.*, 303.

His claim as an alleged creditor of the decedent gives him no right to impeach the order annulling her pretended will, for as creditor merely he has no legal interest in the will. A creditor has no right *as such* to file a caveat to a will or to propound a will for probate.

*B.* Because if his position as alleged creditor gives the petitioner a standing in Court, the claim upon which he rests his case is not shown to have ever been proved by him and passed by the Orphans' Court, and is, moreover, on the face of the petition, shown to be a claim on which no recovery can be had, and which the Orphans' Court cannot properly consider at all.

*C.* Because on the face of his petition it appears that in consideration of a large sum paid to him by the estate of Mrs. Magraw, he voluntarily and deliberately retired from and abandoned all contest in regard to the validity of said pretended will, and while still retaining said consideration, under such deliberate settlement, he cannot now be heard to question the order of 14th October, 1873, annulling said alleged will.

Having renounced his executorship and trusteeship, in order that he might cease to have any legal or personal interest in the question of the validity or invalidity of the will, and having been liberally paid for such renunciation, he has no right now to intermeddle in the matter. Indeed, such an attitude is a breach of the settlement, and inconsistent with good faith and fair dealing. *Hartle vs. Stahl,* 27 *Md.,* 157 ; *Visitors, &c. of St. John's College vs. Comptroller,* 23 *Md.,* 640 ; *Barry vs. Levy,* 28 *Md.,* 29–33 ; *Price vs. Moore,* 21 *Md.,* 363.

*D.* Because, if after such settlement he ever had any right to resist the caveat to the said pretended will, and to impeach the validity of the order of October 14th, 1873, he has long since lost, as have also the other petitioners, such right by *gross laches,* for which neither he nor they offer any excuse or explanation whatever. *Wood vs. Carpenter,* 101 *U. S.,* 140–143 ; *Stearns vs. Page,* 7 *Howard,* 819, 829 ; *Moore vs. Greene,* 19 *Howard,* 69–72 ; *Baubien vs. Baubien,* 23 *Howard,* 190 ; *Badger vs. Badger,* 2 *Wall.,* 95 ; *Case of Broderick's Will,* 21 *Wall.,* 503 ; *Wear vs. Skinner,* 46 *Md.,* 257 ; *Bailey vs. Glover,* 21 *Wall.,*

Munnikhuysen, Carson, *et al. vs.* Magraw.

346–350; *Marsh vs. Whitmore*, 21 *Wall.*, 185; *Brown vs. County of Buena Vista*, 95 *U. S.*, 159–160; *Godden vs. Kimmell*, 99 *U. S.*, 210–212; *McCoy vs. Poor*, 56 *Md.*

The principles of law applicable to this question are these—

Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion, and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence. *Wood vs. Carpenter*, 101 *U. S.*, 143.

In this class of cases, the plaintiff is held to stringent rules of pleading and evidence, " and especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the Court may clearly see whether, by ordinary diligence, the discovery might not have been before made." A general allegation of ignorance at one time, and of knowledge at another, are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. *Ibid*, 114, 141, 142.

As to the order refusing to appoint an administrator *pendente lite*, no appeal will lie from this order, and that therefore the appeal should be dismissed. *Revised Code, Art. 50, sec.* 105.

The Orphans' Court are not required to appoint an administrator; but such appointment is discretionary with them, and consequently, when they refuse to make such an appointment, their action is final, and not subject to review by this Court. If an appeal will lie, the

order appealed from should be affirmed; because in such a case as this, the Orphans' Court have no power to appoint an administrator *pendente lite.* There is here no such contest in regard to the validity of a will, as is contemplated by the Code, and consequently, the Orphans' Court was right in dismissing the appellants' petition. *Munnikhuysen vs. Magraw,* 35 *Md.,* 289–290.

IRVING, J., delivered the opinion of the Court.

There are four appeals in this record which have been argued together, and will be disposed of in one opinion. Three separate petitions were filed in the Orphans' Court of Cecil County, each asking that the Court would set aside and annul a former order of that Court, passed on the 14th of October, 1873, whereby, the order of that Court previously passed, admitting the will of Emily W. Magraw to probate, was annulled, the will set aside, and the letters testamentary of Adam R. Magraw were revoked. These petitions all make substantially the same charges, with such variations only as the peculiar relation of the several parties to the subject-matter made necessary. The main ground, upon which the applications are based, is the allegation that the order, which is sought to be annulled and set aside, was procured by the fraud, collusion and deceit of the parties in the various proceedings by which the order was reached and secured. The charges are various and specific, and it will unnecessarily encumber and extend this opinion, to do more now than give the general character of the averments, as we have done. The petitions are all verified by the oath of the respective petitioners; and the answer, which for the purposes of this decision, cannot be considered, is also on oath, and it is proper to say indignantly denies each and every of the charges, and makes specific averments of facts wholly different from, and inconsistent with petitioners' averments.

When the cases came on for trial the following order was, on the 20th of January, 1881, passed by the Orphans' Court, and signed by the several Judges thereof: "The petitioners in the above entitled causes, at the trial thereof, offered to prove by competent testimony the truth of each and every allegation in said petitions. And the defendant, in order to present the question of the jurisdiction of this Court to hear and determine these cases, and also to present, without the formality of a demurrer, the sufficiency of the allegations of the several petitions, and amended petitions, by his counsel excepted to the competency and admissibility of the proposed testimony, on all grounds to which it or any part of it may be liable, and the Court being of opinion, that it has no jurisdiction in the premises, and that the proposed testimony is inadmissible, refused to allow the same to be taken, and dismissed the said petitions of the several petitioners with costs." To this order was appended the following statement or agreement of counsel, signed by them respectively: "It being agreed and understood, the above exceptions of the defendant shall be taken as operating in the nature, of both an exception to the jurisdiction, and as a demurrer to the several petitions, and amended petitions, and to the proposed evidence." From this action of the Orphans' Court, appeal has been taken.

As we understand the order of the Court, and the agreement or statement of counsel accompanying it; and as we think the true interpretation of both to be; the cases come before us on petitions filed in the Orphans' Court of Cecil County, making certain allegations of fraud, collusion and deceit, practiced upon the Circuit Court and jury of Cecil County, and upon the Orphans' Court of Cecil County, whereby a verdict upon certain issues affecting the will of Emily W. Magraw was procured, without evidence, and by consent and collusion, contrary to the facts as they exist, by which means the Orphans' Court of

Munnikhuyson, Carson, *et al. vs.* Magraw.

Cecil County was imposed upon, and was induced to pass an order vacating a former order of that Court, by which the will of Emily W. Magraw was established and admitted to probate, and then setting such will aside, to the prejudice of, and in fraud of the petitioners ; and that the offer of competent proof was made to establish each and every of the allegations of the petitions ; but upon the objection of the defendant to the jurisdiction of the Court to hear the case ; and that the petitions made no such case as entitled the petitioners to offer any testimony whatever in support of their allegations, and therefore the defendants objected to the competency or admissibility of any evidence whatever of the nature indicated by the allegations ; the Orphans' Court sustained the view of the defendants : and while admitting *in terms* by their order, that "competent testimony" was proffered, declined to hear any proof for want of jurisdiction in the premises ; and therefore without receiving any evidence whatever, dismissed the several petitions. The case is therefore before us, upon the question whether a sufficient case has been made by the several petitions, to require of the Orphans' Court, the exercise of legitimate power to hear and determine their complaint ; and whether their refusal to do so was error. No specific question of evidence is before us in the record ; but the simple inquiry before us is, whether the allegations of the petitions are such, and in such form, that the petitioners are entitled by legal and competent evidence to establish them if they can.

The power and right of the Orphans' Court to revoke and rescind orders which have been obtained by fraud and imposition as an abstract proposition, has not been really questioned by the appellee's counsel ; and if it had been, it is too well settled, that it has such power to require discussion. *Raborg vs. Hammond,* 2 *H. & G.,* 42 ; *Montgomery & Spencer, Ex'es vs. Williamson,* 37 *Md.,*

421; *Shultz vs. Houck, Ex'r*, 29 *Md.*, 24. But the appel-
lee's counsel contend that the Orphans' Court *in this case*,
has no jurisdiction: 1. Because Munnikhuysen's petition
" was not filed within thirty days after the 13th of Sep-
tember, 1880, the date on which he first learned of the
order of the 14th of October, 1873, and the facts establish-
ing the alleged fraud." For this position he relies upon
sundry authorities, and among them *Edwards vs. Bruce*,
8 *Md.*, 387, and *Redman vs. Chance*, 32 *Md.*, 52, 53, and
especially upon the latter. In these cases it was held,
that upon the principle of analogy, Courts will apply
express statutory restrictions in regard to time to cases
of similar character, where no express legislative pro-
vision exists, and therefore, it was held in *Redman vs.
Chance*, that an application to revoke must, by analogy
to the statute which required appeal to be taken from an
order appointing a guardian, within thirty days from the
passage of the order, be made within thirty days from
the time *actual knowledge* was obtained of the passage of
the order sought to be revoked. The Court in *Redman
vs. Chance* said, "that a party seeking to set aside an
order or judgment, because the same was passed without
notice, must institute proceedings within the time limited
for appeals. By this rule, he has the same time after the
knowledge of the order or judgment passed or rendered
*without notice*, that he would have to appeal if duly sum-
moned, and its application cannot work any injustice."
This is a most wholesome rule, and in all cases, which
come within the contemplation of the Court in so declar-
ing, it ought to be enforced; but we think, this case forms
an exception, and is not strictly included within the rea-
son of those decisions. In those cases, no fraud was
alleged to have been practiced. Fraud is an exception to
every rule. In this case, fraud of a gross character is
alleged, and if it exists, it ought to be unearthed; and a
reasonable time after its discovery ought to be allowed for

the ascertainment of proofs by which to establish it, and to prepare with due care and explicitness, an application to the Court charging it.   What is reasonable time, must depend upon the circumstances of each particular case, as has been repeatedly decided by this Court, in applying the doctrine of *laches*.   In testamentary matters, the Legislature of the State has exhibited especial care in providing against unnecessary delays in the settlement of estates; and in cases of this kind, a delay might be regarded as *laches,* which in a case of another character might not be so considered.   Proper diligence should always be required; but in this case, we do not think the strict rule laid down in *Redman vs. Chance,* would allow a *reasonable time* for the necessary investigations and preparation of papers.   In cases of fraud, no positive and unvarying rule can be laid down; for it would depend in each case upon the character of the fraud, or fraudulent devices, and the effect produced by it; of which the Courts, which never countenance fraud if it can be detected, must judge.   In this case, certainly, from aught that appears in the *petitions,* we are not warranted in supposing the petitioners acquiesced in what is alleged to have been done, and therefore, are barred by *laches,* from claiming the interposition of the Court.

2. It is contended that the Court has no jurisdiction, because Henry S. Magraw and Emily H. Rathvon are indispensable parties and have not been brought in. There can be no doubt of the correctness of the rule, that all persons having an interest in the subject and object of the *suit* must be made parties or the Court will not proceed to decision of the cause.   The numerous authorities cited by the appellee's counsel abundantly establish that as the true and general rule; but this case does not fall within the operation of the rule therein laid down. These persons by the allegations of the petitions, are original petitioners in the case assailed and are non-resi-

dents of the State, and residents of the State of Kansas. It was upon *their caveat* and application for issues that the final judgment of the Orphans' Court was procured setting aside the will. If that judgment was procured fraudulently, as is alleged, the judgment was void, and it ought to be so declared. We have only to look at the character of the averments. We have nothing to do with their truth or falsity.

The case is being heard as if on demurrer, and we are called upon to say, whether assuming the statements of the petitions can be sustained by proof, and are true, the judgment should stand. If the facts be true, as we have said, the judgment is void; and these parties are already in Court upon proceedings instituted by them, and which have not been brought to final determination. If it were possible for parties to concoct and execute a fraud such as this is alleged to be, and after obtaining judgment, by removal from the State beyond the jurisdiction, could prevent its investigation, and possible rectification, it would be a reproach to the law or its administration. Situated as this case is, we cannot hold that the persons named are entitled to especial notice. That they know of it there can be little doubt, as the petitioner states that he mailed them copies of his petition, and certain correspondence about it is contained in the answer and brief of Adam R. Magraw. If any legal mode of reaching them by publication in the Orphans' Court was authorized, as a matter of practice, it would have been proper to resort to it, and no doubt it would have been done; but as the law makes no such provision in their favor; and as it is their own act, and the judgment procured by it, which is assailed, they must be held to be in Court to defend the proceeding which has been instituted, to set aside the judgment they procured. It is a motion in the same case which they must defend. That no injustice is thereby done them is abundantly apparent from evidence submitted to this

Court in the answer of Adam R. Magraw and brief of appellee's counsel, wherein it is shown that Mr. and Mrs. Rathvon, at least, have actual knowledge of the pending proceedings, by the correspondence between the appellants' counsel and Mr. Rathvon which is there incorporated. It is not to be likened to an *original* proceeding such as is contemplated in the several authorities cited by appellee's counsel, with which we find no fault; but it is a motion to strike out a judgment of a Court procured by these very absent persons through counsel, which counsel is in Court, with knowledge of the proceeding and opposing it. Notice to the counsel, *in such case*, is notice to the parties. These original caveators, therefore, will be held affected with notice and bound by the result of the proceeding.

3. The appellee insists that the Orphans' Court has no jurisdiction to set aside the judgment in the premises upon the case made by petitioner, because it is based on a verdict rendered in the Circuit Court, which has never been set aside *by that Court*, but remains of binding force on the Orphans' Court. In other words, the appellee contends that proceedings to set aside the verdict should have been commenced in the Circuit Court, and until that is done and the verdict is set aside by the Circuit Court, the Orphans' Court has no jurisdiction to interfere with its own judgment based on that verdict. There can be no doubt, as was decided in *Price vs. Taylor*, 21 *Md.*, that it was the purpose of the law authorizing such proceedings before a jury to enable the parties thereby " to control the action of the Orphans' Court by the finding of a jury," and it is equally clear that it is the duty of the Orphans' Court " to accept the conclusion of the jury and make it effective by proper orders or decrees." The questions when *tried* and *answered* by the jury, are settled in accordance with their verdict rendered on the proof. But the verdict, which is thus binding on the Circuit Court, and conclusive of the questions submitted to the jury, is a ver-

dict rendered upon issues, which could be legally framed and sent up for trial; and a verdict found after a *trial* at and upon which the jury have had evidence submitted to them about the matters in controversy, from which they could reach a conclusion by the exercise of their own independent judgment, and not such a verdict as is alleged to have been rendered in this instance, without any evidence whatever, upon any of the matters at issue; but which was rendered, as is alleged, by the simple consent of parties charged to have been colluding to procure it; and without any actual contest. This Court has said, that the issues are sent to the Circuit Court by the Orphans' Court, to enable the latter Court "to advertise itself of the *real facts* of the case." *Cain vs. Warford*, 3 *Md.*, 462. The proceeding is based on a contest.

If the verdict in this case was procured by the means, and in the way which is alleged, it was void and not binding on the Orphans' Court. If the certificate from the Circuit Court, upon which the Orphans' Court acted, was an exact and true account of the proceedings in the Circuit Court and of the verdict, it was misleading to the Orphans' Court; and the proceeding was a fraud upon the Orphans' Court and upon its jurisdiction.

The Circuit Court had but one duty to perform, and when that was done it was *functus officio.* Before it had certified the verdict and the Orphans' Court had rendered their judgment based upon it, the Circuit Court could have heard and decided any motion for new trial upon whatever grounds it might have been rested; but after the Orphans' Court had finally disposed of the case upon the verdict, and set the will aside, the Circuit Court's power over the matter was at an end. The Orphans' Court having power to render the *judgment* must, by virtue of that jurisdiction, have the inherent power to make due inquiry into any fraud, by which their action has been obtained, and to strike out the judgment, if found improperly or improvi-

dently entered by any fraudulent procurement or mis-representation. *Raborg vs. Hammond,* and *Montgomery and Spencer, Ex'es vs. Williamson,* already cited fully establish this; and such is the effect of all the authorities.

If it should be made to appear to the Orphans' Court in any case after the framing of issues and their transmission to the Circuit Court for trial, and after verdict certified to them, that the Court had been induced to frame issues in a case where no such authority existed, the Court would not be bound to regard the verdict, but might at once dismiss the petition, notwithstanding the verdict; and if so, as all must admit, then if their judgment be entered on the verdict, and it be shown that the proceeding was not warranted, it would not only be within the power of the Court, but its duty, upon proper application to strike out such judgment. In *Cain vs. Warford,* 3 *Md.,* 462, this Court said, where there is no dispute it is not incumbent on the Court to send issues; and for the reason that there is nothing of which the Court needs "advertising."

It is only in cases of "contest" that such proceeding is authorized by the statute. It was clearly not within the power of the Orphans' Court, upon consent of the parties to this proceeding, without trial, or the verdict of a jury, after trial before it, finding the facts alleged to be true, to set aside a will whereby estates in remainder to infants and unborn children are given; to the enlargement of the estates of the parties consenting thereto, the destruction of the estates in remainder of infants, and persons not in being, and the destruction and obliteration of trusts, such as it is alleged, in the several petitions under consideration, that the will created. If so, it follows that it was not competent and proper to frame issues in a case where there was entire agreement between the parties, before the Court, as to the facts alleged. And who did not, for the purpose of such consent, represent

all the parties in interest and in remainder; and send such issues to the Circuit Court for trial, that there, by mere consent of parties colluding together, a verdict might be obtained, through which that could be established in an indirect way, which could not be done directly. If the facts of the petition be true, and can be so established by competent proof, the way of the Orphans' Court will be perfectly clear to act as the proof requires them. In the case of *Wilson vs. McCarty*, 55 *Md.*, 277, in a proceeding in the Orphans' Court to re-open administration accounts, which had been approved by order of Court, many years before application to open and correct was made, the case came up on petition and answer; the answer denying all the allegations of the petition, and denying the jurisdiction of the Court in the premises; the Orphans' Court refused to hear the proffered proof, and, as here, dismissed the petition for want of jurisdiction. This Court treated the answer as a plea to the jurisdiction, and reversed the order of the Orphans' Court, deciding, that it was the duty of the Court on the issue being made by the answer, to hear the proof which might be offered to sustain the allegations of the petition. If the Orphans' Court should be decided to have jurisdiction, (as we have decided it has,) then the appellee's counsel further contended, that the appellant, Munnikhuysen, had no standing to assail the order and judgment of the Orphans' Court:

1. Because his only interest is that of creditor of the estate, and that gives him no right to contest the will. If it be true, that this appellant has no other interest than as creditor of the alleged testatrix, we are of opinion he has no such interest in the question, whether the will was good or bad, as entitles him to controvert the action of the Orphans' Court about it. He must have some interest *under the will* to give him standing in Court, to contest or defend it. *Hoffar vs. Stonestreet*, 6 *Md.*, 303.

Munnikhuysen, Carson, *et al. vs.* Magraw.

It is true, that he has pressed his right to have the order of the Orphans' Court set aside, in his petition and in his brief in this Court, especially on the ground of his being a creditor of the estate; and he has laid little stress on the fact that by the will, as he has set it out in his petition, large property, real and personal, was left to him in trust for Emily H. Magraw. He does not allege in his petition, that he has renounced that trust. He does not state that he has renounced the executorship. He does not state whether he has or has not renounced the trust. He distinctly asserts it as created by the will. If he has not renounced it, he has such an interest as to justify his interference in this way, upon the belief of the facts existing as he has alleged them; for the title to the property, real and personal, so devised and bequeathed to him in trust, is in him. We are compelled to act on the allegations of the petition and the facts stated in it; for the case has not gone to proof; and as presented, we cannot take the assertion of the answer that he has so renounced. On the other hand, if it shall appear, when the case comes up again for hearing on the remand, that he has actually renounced the trust, and divested himself of the title, duties and responsibilities devolved on him by it, it will be the duty of the Orphans' Court to dismiss his petition.

2. Appellee's counsel insist that this is a case where the parties petitioning, must be held to the strict rules of pleading, and it is sought to apply the same test of sufficiency to these petitions, which is applied to a bill in chancery for injunction, when demurrer is interposed. To this view we cannot accede. Common law pleading has never been introduced or found practicable in the Orphans' Courts. A demurrer, technically considered, has no place there. Constituted as those Courts are for special purposes only, and composed of Judges chiefly laymen, unskilled in the refined and technical distinctions of the law, and selected mainly because of their business

capacities, it would sometimes amount to denial of justice if such rules were applied there. Less formal statements are tolerated there; and pleadings are taken in that Court. to import what common sense will understand by them, whether they would stand the test or not in another forum, where rigid rules of pleading are enforced. We are not called on to say whether in a Court of more formal procedure, these petitions are exceptionable on the grounds alleged. We have only to deal with them as pleadings applicable to such a case in the Orphans' Court. Without considering the objections *seriatim,* it is sufficient for us to say, that enough is stated, and sufficiently stated in the several petitions, to entitle the petitioners to a hearing, and to warrant the relief prayed for, if the Court finds the allegations sustained by proof. The order so far as it affects Howard Munnikhuysen, will be reversed.

The petition of Mary Carson adopts Mr. Munnikhuysen's petition as part of her petition, and alleges in addition thereto, that she is a legatee under the will of Mrs. Emily W. Magraw, to the extent of five hundred dollars, and that in the month of December, 1874, she was paid by Adam R. Magraw, three hundred dollars of that amount, who promised to pay the balance, but though often requested and demanded of him, he has never done so. She also says that it was paid by him as executor, as she believed at the time; and that she has "just learned the fact of the revocation of the order admitting the will to probate, and of the revocation of Adam R. Magraw's letters testamentary, by reason whereof she cannot sue for the residue of the legacy due her. She is also a non-resident of the State. All that has been said in regard to the several questions discussed in Munnikhuysen's case, applies with increased force to the petition of Mary Carson. Being a legatee, she has undoubted legal standing in Court. She alleges ignorance of the order now attacked; and suggests a fact of dealing with her especially calculated to

lull her into security.  She alleges that she only learned the facts when her petition was filed ; so that there is no chance, as the case is presented to us of invoking the doctrine of *laches.*  The same statement respecting the promptness of taking action upon obtaining information of the facts in, the case, is contained in the petition of Annie Carson and others.  They charge that they are legatees, and are therefore entitled to hearing.  They do not allege any payments on account of their legacies ; but they do charge repeated promises of Adam R. Magraw, whom they *believed to be executor*, to pay them.  The offer having been made to prove all these facts in their several petitions, notwithstanding the respondent denied them, it was error in the Orphans' Court to refuse them opportunity to establish their charges ; and if established, to have the order complained of rescinded, in order that the questions intended to be tried by the issues may be properly and effectively tried, which was not done, if the facts alleged be true.  In the case of Mary Carson therefore, and the case of Annie Carson and others, in this record the judgment or order of the Orphans' Court must be reversed also.

The remaining case and question presented by the record, is whether the order of the Orphans' Court, dated· the 14th of December, 1880, whereby the joint petition of the several appellants, for the appointment of an administrator *pendente lite,* was dismissed was correct.  In respect to that order we find no ground to disturb the action of the Orphans' Court.

It is immaterial to the decision of this question, whether the Orphans' Court had a discretion in respect to the granting of letters *pendente lite* altogether, or whether their discretion, by the terms of the statute, is restricted to the choice between the parties indicated in the statute as entitled to receive letters, when granted by the Court. By the express language of sec. 68 of Art. 93 of the Code,

Munnikhuysen, Carson, *et al. vs.* Magraw.

it is only in "cases where the validity of the will is or shall be contested that letters *pendente lite* may be granted." In this case the will is not before the Court on contest. The will has been set aside by the action of the Court, and so far as this application was concerned the Court acted rightly. Full letters of administration in such case were grantable. The contention now existing is the right to have the question of the will's validity re-opened. Until that question shall be decided affirmatively, and the order revoking the probate of the will and setting the same aside shall be rescinded, that order stands, and there is no will. The case, therefore, was not one where letters of administration *pendente lite* are provided for. There was no error in refusing to appoint such administrator, and the order dismissing the petition for such appointment will be affirmed.

> *In the several appeals of Howard Munnikhuysen, of Mary Carson and of Annie Carson and others, the order of the 20th of January, 1881, (whereby these petitions were dismissed,) is reversed with costs, and the cases are remanded.*
>
> *On the appeal of Howard Munnikhuysen and others from the order dismissing petition for administrator pendente lite, the order is affirmed with costs.*

(Decided 1st July, 1881.)