JAMES A. REDMAN and MARY H. REDMAN, his Wife *vs.* TILGHMAN N. CHANCE, Guardian, &c.

*Power of the Orphans' Court to appoint a Guardian for an Infant whose Father or Mother may be living—How the regularity and validity of the Appointment may be impeached—Time within which Proceedings to impeach the Appointment must be instituted.*

The Orphans' Court has the right and the power to appoint a guardian for an infant, whose father or mother may be living at the time of the appointment, provided notice be given to such father, or mother (if there be no father,) to show cause why the appointment should not be made; but such notice must be by summons if the party be within reach of the process of the Court, and by publication, if beyond its jurisdiction.

Redman and Wife *vs.* Chance, Guardian.

Where the appointment of such guardian is made without due notice to the father, or mother (if there be no father) of the infant, the party claiming to be aggrieved, is not restricted to an appeal directly from the order making the appointment, but may, by petition or other proceeding in the Orphans' Court, impeach the regularity and validity of the appointment.

But where the party, who claims to be aggrieved by the appointment, proceeds to impeach its regularity by petition, the same must be filed within thirty days, after actual knowledge received of the order of the Court making the appointment.

APPEAL from the Orphans' Court of Talbot County.

The original petition, filed in this case on the 11th of August, 1868, was in the name of Mary H. Redman, by her next friend, William S. Callahan ; to this the appellee filed his answer. Subsequently, the petition was, by consent, amended, so as to make James A. Redman and Mary H. Redman his wife, the parties petitioners, and by like consent, the answer was also amended so as to conform to the change thus made in the parties to the petition. The amended petition prayed that the appointment of the appellee as guardian of the infant children named therein, of the appellant, Mary, by her former husband, Thomas H. Sherwood, might be revoked, and that the said Mary, or some person in whose favor she might relinquish her right, should be appointed their guardian for the following reasons :

1st. Because the appointment of the appellee as guardian was irregular and void, inasmuch as, prior thereto, no notice, by publication or otherwise, was given to the said Mary to show cause why such appointment should not be made.

2d. Because, if such notice had been given, the appellant, Mary, could and would have shown good cause against the appointment of the appellee as guardian; "and that the right to exercise the power of appointment, which vests only upon the service of notice as aforesaid upon the mother (if there be no father living) of the said infant children, was irregular and void, from the fact that the said Mary was the mother

of said infants, and within the reach of the mandate of this Court."

3d. Because the appellee was not the proper person to be guardian of the said infants, inasmuch as he was the trustee for the sale of the real estate of Cornelius Sherwood, deceased, their grand-father, in which real estate the said infants were interested.

To this petition the appellee filed his answer, which sets forth that the appellant, Mary, was appointed administratrix of the personal estate of her first husband, Thomas H. Sherwood, deceased, on the 11th of May, 1863; that on the 13th of July, 1866, she settled, in the Orphans' Court of Talbot county, a final account of administration, and that a distribution was then made of the net balance of the estate, and the sum of $87.64 was distributed to herself, as widow, and a like sum to each of her said infant children; that the appellee was, on or about the 4th June, 1864, appointed administrator of the personal estate of Cornelius Sherwood, deceased, the grand-father of the said infant children, of whom they were the sole representatives, and that although, for causes therein stated, he had been unable to settle a final account of administration, yet he had reason to believe that a considerable sum of money would accrue from the same, to the said infants; that in August, 1864, by a decree of the Circuit Court for Talbot county, in equity, the appellee was appointed trustee for the sale of the real estate of the said Cornelius Sherwood, deceased, the grand-father of the said infants, and that for a considerable time before his appointment as guardian of the said infants, there remained in his hands, as trustee, belonging to the said infants, and awaiting the appointment of a guardian to them, the sum of $8,380.79, of the proceeds of the sales of the said real estate; that from the time of the settlement of the final account of administration of the appellant, Mary, as administratrix of her deceased husband, Thomas H. Sherwood, to the application of the appellee, on the 7th January, 1868, to be appointed guardian to

the said infants, nearly eighteen months had elapsed, during which time repeated efforts were made by the appellants and by their counsel, to obtain security to enable the appellant, Mary, to execute a sufficient bond to qualify her to become the guardian of her children, and that, failing to procure such security, she abandoned all expectation of being or becoming their guardian, and that it was not until the appellee was so informed by the counsel of the appellants, that he determined to make application to be appointed their guardian.

That on the receipt of the said information, the appellant did, as well for the purpose of enabling himself to close his aforesaid trusteeship, and of causing to be invested for the benefit of the said infants the large sum of money in his hands as trustee, together with the amounts due them respectively from the personal estate of their deceased father, then in the hands of the said Mary, and held by her for some eighteen months, since the settlement of her final account as administratrix of his personal estate, and likewise for the security and investment of such sums of money as might be due the said infants from the personal estate of their deceased grandfather, and of rents due and owing to them from certain real estate, of which they were heirs-at-law, on the 7th January, 1868, make application to the Orphans' Court of Talbot county to be appointed guardian to the said infants, on which day the Court ordered that the appellee, who was then Register of Wills for Talbot county, should give notice, verbally or otherwise, to the appellants of his application, and warn them to appear and show cause why his appointment should not be made, which notice was, within a week thereafter, given by the appellee to the appellant, James, who promised to communicate the same to his wife, and subsequently assured the appellee that he had so communicated the said notice to her. That no further action was taken by the Court upon the appellee's application until the 5th of May, 1868, when the appellee, having made return of the service of the notice, in

the manner above stated, and the appellants having failed, for a period of nearly four months after the said notice was given them, to appear and show cause why his appointment as guardian should not be made, the Court, on the last named day, appointed the appellee guardian of the said infants, and he immediately thereafter qualified as such, according to law.

The answer denied that the appointment thus made was irregular and void, and insisted that it was, in all respects, regular and valid. It also denied that, even if notice had, in fact, not been ordered by the Court, or given to the appellants as before stated, the appointment of the appellee would thereby have been rendered void; but, on the contrary, it insisted that the Orphans' Court had full and lawful jurisdiction in the premises; that the appellant Mary had no right or claim of preference to the appointment, nor had she the right to relinquish any such supposed claim in favor of any other person; and it further insisted that, if any such preference or supposed right of relinquishment ever did exist, the same was waived and abandoned by her failure to execute a guardian's bond, and to qualify as guardian, or to relinquish such supposed right, for nearly twenty-two months from the date of the settlement of her final account of administration of the estate of Thomas H. Sherwood, deceased, to the time of the appellee's appointment as guardian of the said infants.

The answer admitted that the appellee was appointed trustee for the sale of the real estate of Cornelius Sherwood, deceased, and that the said infants are interested in the proceeds of its sale, but denied that he was thereby disqualified from being their guardian.

On the 11th November, 1868, the appellee moved the Court to dismiss the appellants' petition, and on the 11th March, 1869, the appellants tendered certain issues, and prayed the Court that they might be sent for trial to the Circuit Court for Talbot county. These issues, four in number, presented, in fact, but one question, and that was, whether or not the appellants, or either or both of them, were notified, by

publication or otherwise, of the application of the appellee to be appointed guardian of the infant children of the appellant, Mary.

The Orphans' Court overruled the prayer for issues to a Court of Law, and on the 16th of March, 1869, passed an order dismissing the petition. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*Charles H. Gibson* and *Alex. Randall,* for the appellants.

Did the Orphans' Court act correctly in passing the order of the 16th of March, refusing the issues tendered by the appellants, and which they prayed might be sent to the Circuit Court for trial? At any stage of the proceedings, before final adjudication, either party may require an issue, and the Orphans' Court is not at liberty to refuse it. *Code of Public General Laws, Art.* 93, *sec.* 250; *Mayer's Digest,* 385.

Section 250 of Article 93 of the Code, under which issues were prayed, is the same as the provisions of the Act of 1798, ch. 101, &c., and the right of the party to require an issue or issues remains unchanged. *Mills vs. Hume's Ex'rs,* 22 *Md.,* 352, 353.

The necessity for the framing of issues was not discovered until the *facts* were presented. The allegation of the want of notice, &c., on the part of the appellants, and the denial on the part of the appellee, involved a direct issue as to the material facts in the case. The issues, therefore, were prayed in order that the Orphans' Court, upon the finding of the jury, might be advertised of the truth of the matter put in controversy by the plenary proceedings, and might act understandingly in the appointment of the appellee as guardian, &c.

The issues prayed for do not involve the *validity* of the act of the Orphans' Court in the appointment of the appellee; the petition for issues, therefore, is *not* addressed to the sound

discretion of that Court. The only case in which the Court *can* exercise a discretion in ordering a plenary proceeding and issues, is that wherein nothing but a *legal* question is involved, and there in *no* dispute as to *facts*. *Cain vs. Warford*, 3 *Md.*, 454.

In this case there is *no legal* question raised by the issues in the Court below; the questions involved are questions of *fact*, whether "*notice*" was given, &c., and at the proper stage of the proceedings; the issues being tendered and prayed to be sent to a Court of. Law, the Orphans' Court should not have refused them; and the order, therefore, of the 16th of March, was wrong and should be reversed. *Mills vs. Humes' Ex'rs*, 22 *Md.*, 352, 353, 358, 359; *Barroll & Cannell vs. Reading*, 5 *H. & J.*, 175, 176; *Pegg vs. Warford*, 4 *Md.*, 385, 394, 395; *Brooke vs. Townshend*, 7 *Gill*, 15; *Boofter vs. Rogers*, 9 *Gill*, 46; *Marriott vs. Handy*, 8 *Gill*, 32; *Cover, et al. vs. Stockdale*, 16 *Md.*, 2, 3.

*Philip Frank Thomas*, for the appellee.

The Orphans' Court was right in refusing to send the issues tendered by the appellant, to the Circuit Court for trial; they were immaterial and impertinent, inasmuch as the Court, which appointed the appellee guardian to the infant children of the appellant, Mary, was of competent jurisdiction to make the appointment, and being so, its judgment cannot be afterwards questioned by any other tribunal, when coming, as it does in this case, incidentally before it. *Code, Art.* 93, *sec.* 146; *Fridge vs. The State, &c.*, 3 *G. & J.*, 112; *Lefever vs. Lefever*, 6 *Md.*, 473.

The act of the Court in making the appointment of guardian, being within its jurisdiction, and assuming that it was legally and properly made, will be supported by every legal intendment. *Raborg vs. Hammond*, 2 *H. & G.*, 49, 50; *Slattery vs. Smiley*, 25 *Md.*, 389.

The issues tendered being immaterial and impertinent, it was the right and duty of the Orphans' Court to refuse to

send them for trial to the Circuit Court. *Smith and Wife vs. Young,* 5 *Gill,* 197; *Cain, et al. vs. Warford,* 3 *Md.,* 454; *Pegg, et al. vs. Warford,* 4 *Md.,* 385; *Yingling and Wife vs. Hesson,* 16 *Md.,* 113.

The order of the Orphans' Court dismissing the petition of the appellants was right, because the petition of the appellants, for the revocation of the appointment of the appellee as guardian of the infants, was filed too late. It should have been filed within thirty days after the appointment of the guardian was made, or notice thereof brought home to the appellants, that being the time limited by law for taking an appeal. *Code, Art.* 5, *sec.* 39; *Berret vs. Oliver,* 7 *G. & J.,* 207; *Edwards, Adm'r of Bruce, vs. Bruce,* 8 *Md.,* 393; *Stocksdale and Wife vs. Conaway, Adm'r of Cover,* 14 *Md.,* 107.

The remedy of the appellants was by appeal from the decision of the Orphans' Court making the appointment of the appellee as guardian. *Lefever vs. Lefever,* 6 *Md.,* 478; *Slattery vs. Smiley,* 25 *Md.,* 389 . *Stevenson vs. Schriver,* 9 *G. & J.,* 335; *Cecil vs. Cecil,* 19 *Md.,* 80.

ROBINSON, J., delivered the opinion of the Court.

On the 11th of August, 1868, the appellants filed their petition in the Orphans' Court of Talbot county, praying that the appointment of the appellee as guardian for the infant children of Mary H. Redman, one of the appellants, might be revoked, on the ground that it was made without notice to the mother, as required by law.

This appeal is taken from the order of the Court dismissing the petition, and refusing to send certain issues in regard to the question of notice to a Court of Law for trial.

The appellee insists that his appointment, being the act of a Court of competent jurisdiction, it cannot be impeached by a proceeding of this kind, but that the remedy of the appellants, if any, was by an appeal directly from the order of the Court making the appointment. In this view we do not concur.

The only power conferred on the Orphans' Court in appointing guardians for infants, if the father or mother be living, is to be found in the following section of the Code:

"The Orphans' Court shall have the right and power to appoint a guardian to any such infant as aforesaid, although such infant may have a father or mother living at the time of the appointment; *provided*, notice by the Court be given by publication or otherwise, to such father, or mother (if there be no father living) to show cause why such an appointment should not be made."

In thus recognizing the common law-right of the parent to the guardianship of the child, the Legislature was careful to guard against the appointment of any other person except upon notice to the father or mother, if living, and a strict compliance with this provision of the statute, was, therefore, made a condition precedent to the exercise of the power conferred. Such, indeed, are the important and delicate duties of a trust of this character, and so close and intimate, ought to be the relations between the guardian and the ward, that it was obviously the purpose of the framers of the law to prevent, except under extraordinary circumstances, the *intrusion* of a stranger between the parent and the child. And to restrict the remedy, where the appointment is made in utter disregard of the express terms of the statute, to an appeal from the order itself, would be to deny, in many cases, relief altogether. It is the failure to comply with the law—to give the notice required, that constitutes the very ground upon which the order is impeached, and the determination of this question must necessarily depend upon evidence to be offered in the case. It may be that the proceedings in the Orphans' Court would disclose the fact that a *summons* was issued, and that it was duly returned "*summoned*," and yet the party claiming to be aggrieved, may aver, and be able to prove, that this is a mistake, and that the process was served upon another person. If, however, the position insisted upon be correct—if the only remedy open to a party thus wronged is, by an appeal

directly from the order making the appointment—if unable
to offer evidence in support of the very ground upon which
the action of the Court is impeached, the record in the Ap-
pellate Court would fail entirely to disclose the merits of the
case.

In *Lefever vs. Lefever*, 6 *Md.*, 472, it was held, that "the
regularity" and the "*propriety*" of the appointment could not
be inquired into collaterally by way of petition. But in that
case the mother was regularly "*summoned*," and the appoint-
ment was not made until three months after the return of the
*summons.* Under such circumstances, the Court said she
must be considered as having waived her right to the appoint-
ment, and if aggrieved by the order of the Court, it was her
duty to have appealed within the time prescribed by law.
And in *Slattery, Guardian, vs. Smiley*, 25 *Md.*, 389, the ques-
tion before the Court was the *removal* of the guardian, and not
the revocation of the appointment, on the ground of want of
notice. The petition alleged that the guardian had been *duly
appointed*, although against the wishes of the mother. More-
over, it was not filed until after the *death of the mother*, and
more than *three years* from the date of the appointment. It
was held that the appointment being the act of a Court of
competent jurisdiction, it ought to be supported by every legal
intendment, and, inasmuch as there was no allegation of
improper conduct on the part of the guardian, either in rela-
tion to the care and management of the property or person of
the infant, there was no sufficient ground to justify his removal.
In *Fridge vs. State, use of Kirk*, 3 *G. & J.*, 104, the suit was
brought against one of the sureties on the guardian's bond,
and it was held that, the appointment being made by a Court
having jurisdiction of the subject matter, the regularity or
correctness thereof could not be impeached collaterally in such
an action. These cases do not go to the extent of saying that,
where the appointment is made without notice to the father
or mother, it cannot be impeached by petition, or that the
only remedy for the party aggrieved is by an appeal from the

order of the Court.   We are clearly of opinion, therefore, that in such a case the father or mother, if living, may, by petition or other proceeding in the same Court, attack the order itself. This general principle has been repeatedly recognized in Courts of Law and Equity, where parties have been allowed, by an independent proceeding, to impeach judgments and decrees rendered without notice.

We are also of opinion that the order of the Orphans' Court directing the Register of Wills to give *verbal notice* to the mother is not such a notice as the Code requires.   It is well settled that Orphans' Courts are Courts of Record, and their proceedings, judgments and orders must not rest in *parol.*   To them is confided judicial duties of the highest importance, and when they speak it must be by the record, the proof of which must not depend on the uncertainty of human recollection. The case of *Carlysle vs. Carlysle,* 10 *Md.,* 440, and the authorities therein referred to, are decisive upon this point.   There it was held, the guardian could not prove by parol an order of the Orphans' Court directing him to make the *loan,* no such order appearing upon the minutes of the Court, and there being no record evidence of the same.   The Code, in directing notice to be given to the father or mother, means *legal notice*—that is, by summons, if the party be within reach of process, and by publication, if beyond the jurisdiction of the Court.

But it is further insisted that the petition ought to have been filed within thirty days after *actual knowledge* on the part of the appellants of the order of the Court making the appointment.   There is no statutory provision, it is true, directing within what period of time a party must appeal or institute proceedings attacking a judgment or order passed without notice.   But the policy of the law which provides a time within which parties to a judgment or decree must appeal, applies with equal force where they are seeking to set aside the same when rendered without notice.   Hence it has been repeatedly held that, upon the principle of analogy, the

Court will apply express statutory restrictions in regard to time, to cases of similar character where no such express legislative provisions exist. Thus, the Act of 1826, chap. 200, sec. 14, provided that appeals from a decree in the Court of Chancery must be prosecuted within nine months from the date of the decree; and in *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 137, where a party was seeking to set aside a decree on the ground of mistake, it was held that he must file his bill for relief within nine months after knowledge of the mistake, that being the time limited for appeals. This principle has been further recognized and extended in *Berrett vs. Oliver*, 7 *G. & J.*, 207, and *Stocksdale and Wife vs. Conaway, Adm'r*, 14 *Md.*, 107; 8 *Md.*, 387. Now, the Code provides that appeals from the Orphans' Court shall be taken within *thirty* days, and it must follow, from the principles laid down in the above cases, that a party seeking to set aside an order or judgment of that Court, because the same was passed or rendered without notice, must institute proceedings within the time limited for appeals. By this rule he has the same time, after *knowledge of* the order or judgment passed or rendered without notice, that he would have to appeal if duly *summoned*, and its application, therefore, cannot work any injustice.

But it is also urged that the Court was right in dismissing the petition, because it does not allege that proceedings were instituted within thirty days after information brought home to the appellants of the order of the Orphans' Court. As a general rule, it is true that this ought to appear affirmatively upon the face of the petition, but no such objection was made below, and it is evident from the answer and the whole record that the only question heard and determined by the Orphans' Court was, whether notice had been given to the mother, as required by the Code. Moreover, it is well known that proceedings before the Orphans' Court are not conducted according to the strict rules of Chancery pleading, and to permit this objection now to be made for the first time, when there is no

opportunity to amend the petition, would not only be a surprise, but manifestly unjust to the appellants.

Assuming, then, that it was filed within thirty days after *notice in fact,* the Court clearly erred in refusing to send the issues tendered to a Court of Law for trial. *Sec.* 250, *Art. 93, of the Code of Public General Laws; Barroll & Cannell, vs. Reading,* 5 *H. & J.,* 175; *Pegg vs. Warford,* 4 *Md.,* 385; *Brooke vs. Townshend,* 7 *Gill,* 15.

The record does not disclose the evidence offered in the Court below. If, however, there is no other proof in regard to the notice than the verbal order relied upon in the answer of the appellee, it must follow, from what has been said, that such a notice is not a *compliance* with the 146th section of Art. 93 of the Code.

In reversing the order below it may be proper to add, that the question whether proceedings were instituted within thirty days after actual knowledge on the part of the appellants of the appointment by the Orphans' Court, is still open for inquiry. If not filed within that time, the application comes too late.

For these reasons, the order below must be reversed, and the cause remanded.

*Order reversed and cause remanded.*

(Decided 19th January, 1870.)