EUGENE L. DIDIER vs. ALFRED J. CARR, Executor of Mary Virginia Crawford, Deceased.

*Orphans' Court; petition to revoke letters testamentary; allegations of fraud; misrepresentations; due diligence.*

Where on the ground of fraud and misrepresentation it is sought to have rescinded an order of the Orphans' Court admitting to probate a paper offered as a last will and testament, due diligence must have been used in procuring the evidence of the fraud complained of, and the proceedings must be instituted within a reasonable time after the discovery of the fraud.　　　　　　　　　　p. 268

A petition was filed in the Orphans' Court in October asking that an order of Court, passed in July, admitting to probate a paper purporting to be a last will and testament, be rescinded, and that the executor's letters be revoked; the petition alleged that there were no relatives of the deceased as nearly related as was the petitioner, and that such fact was known to the executor; that the will was probated without notice; fraud and misrepresentation were also alleged. The Orphans' Court dismissed the petition. On appeal, it was *held,* that the petition was not filed in time; that the petitioner had not shown diligence, and had not proved the fraud or misrepresentation alleged.　　　　　　　　　　p. 270

*Decided April 4th, 1911.*

Appeal from an order of the Orphans' Court of Baltimore City.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas, Pattison and Urner, JJ.

*R. Contee Rose* (with whom were *Wm. Milnes Maloy* and *George M. Brady,* on the brief), for the appellant.

*Alfred J. Carr* submitted a brief, for the appellee.

Pattison, J., delivered the opinion of the Court.

On the fifth of October, 1910, the appellant filed his petition in the Orphans' Court of Baltimore City asking that the order of that Court passed on the eleventh day of July, 1910, admitting to probate what was said to be the last will and testament, and a codicil thereto, of Mary Virginia Crawford, deceased, and granting letters testamentary thereon to Alfred J. Carr, the person named as executor therein be rescinded and annulled and the appointment of the executor be revoked.

In his petition the appellant alleges, among other things, that he is the second cousin of the decedent and that "no relatives of the deceased now living are more closely related, or as nearly related (to her) as your petitioner", and that the fact that he was related to the deceased was fully known to the appellee. That at the time of the death of the testatrix, as well as at the time of the probate of the will, he was a resident of the City of Baltimore, and this fact was known to the appellee, and that the will was probated and the executor appointed under the order complained of without notice to him. The petition also alleges that the appellee, the executor named in the alleged will, fraudulently, and with full knowledge of its falsity, represented to the Court that the next of kin of the decedent were out of the State, and upon which misrepresentation, and in consequence there-

of, the order of July 11th was passed admitting the will to probate and appointing the appellee executor thereof.

The appellee answered denying the charges of fraud alleged against him and denied having any knowledge of the alleged relationship existing between the petitioner and the decedent, and averred that when the Court tasked if "parties had been notified", he stated in the presence of the Court and such of the witnesses to the will and codicil as were present, "that he knew of no one to notify, that he had heard of no relatives of Miss Mary Virginia Crawford, but understood from her that she had no relatives other than some distant cousins residing in the State of Delaware."

A replication to the answer was filed and testimony taken upon the issues joined, at the conclusion of which the Court passed the order appealed from.

The alleged will, drawn by the appellee, was executed by the decedent on the nineteenth day of June, 1905. It was then placed in the custody of the register of wills of Baltimore City, where it remained until opened for probate on the eleventh day of July, 1910. The codicil thereto, likewise prepared by the appellee, was afterwards executed on the seventeenth day of June, 1908, and was also filed with the register of wills, where it remained until opened with the will for probate.

It is contended by the appellee that the relief sought by the petitioner should not be granted, if for no other reason, because of the delay in filing the petition, contending that it should have been filed within thirty days from the passage of the order complained of, or at least within thirty days from the date at which the appellant knew of the passage of the order.

The petition filed in the case of *Redman and wife* v. *Chance, Guardian,* 32 Md. 42, asked that the appointment of the guardian be revoked on the ground that it was not made with notice to the mother as required by law. This Court in that case said, "The law provides that appeals from the Orphans' Court shall be taken within thirty days, and

it must follow, from the principals laid down in the above case, that a party seeking to set aside an order or judgment of the Court, because the same was passed or rendered without notice, must institute proceedings within the time limited for appeal. By this rule he has the same time after *knowledge* of the order or judgment passed or rendered without notice, that he would have to appeal if duly *summoned,* and its application, therefore, cannot work any injustice."

In the case of *Stanley* v. *Safe Deposit Company,* 88 Md. 401, the question there was as to the right to have these issues (to wit: First, whether the paper writing was admitted to probate by the Orphans' Court of Baltimore County, and, second, was it admitted to probate in accordance with the requirements of the laws of this State) sent to the Circuit Court, based on the allegation that none of the relatives of the deceased had any notice or knowledge that the will would be offered for probate and none of them were present when it was offered. In that case this Court held that the decision in the case of *Redman* v. *Chance, supra,* was conclusive of the case then under consideration, and that "The Statute. (Article 5, section 60, of the Code) still limits the time in which appeals can be taken from orders and decrees of the Orphans' Court to thirty days, and it was incumbent upon the appellants to file their petition within that time after knowledge of the fact that the will had been admitted to probate, or at least to have shown some sufficient reason for not doing so, which they utterly failed to do."

In the case of *Munnikhuysen* v. *Magraw,* 57 Md. 172, in speaking of the rule laid down in the case of *Redman* v. *Chance, supra,* this Court said: "This is a most wholesome rule, and in all cases which come within the contemplation of the Court in so declaring it ought to be enforced; but, we think, this case forms an exception, and is not strictly included within the reason of those decisions. In those cases, no fault was alleged to have been practiced. Fraud is an exception to every rule. In this case fraud of a gross character is alleged, and if it exists it ought to be unearthed;

and a reasonable time after its discovery ought to be allowed for the ascertainment of proofs by which to establish it, and to prepare with due care and explicitness an application to the Court charging it."

In this case, as in the case of *Munnikhuysen* v. *Magraw*, fraud is alleged, and we will, therefore, treat it as being an exception to the rule. But, treated as an exception, it, nevertheless, was the duty of the appellant to use all proper diligence in the procurement of the evidence by which such alleged fraud was to be established, and in due season institute his proceedings to correct the wrong complained of. To do this only a reasonable time after the discovery of the alleged fraudulent acts of the appellee was allowed him. "What is reasonable time must depend upon the circumstances of each particular case, as has been repeatedly decided by this Court, in applying the doctrine of laches. In testamentary matters the Legislature of the State has exhibited especial care in providing against unnecessary delays in the settlement of estates; and in cases of this kind a delay might be regarded as laches, which in a case of another character might not be so considered. Proper diligence should always be required." *Munnikhuysen* v. *Magraw, supra.*

We will now consider whether the appellant in this case has exercised the diligence required of him. Miss Crawford died on the third of July, 1910. The appellant was notified of her death, and on the day following her death consulted his son-in-law, Mr. Rose, one of his counsel in this case, and directed him to watch closely whether or not there was a will, and if there was one and it did not protect his interests for him to take such steps as he might deem necessary. Pursuant to these instructions, Mr. Rose, as he states, went to the office of the register of wills almost daily commencing with the fifth of July, inquiring whether or not a will had been filed. On each of these occasions he would be shown the wills filed that day. At none of these visits did he ask if a will had been filed with the register of wills, as is frequently done, before the death of the testa-

tor. On the 11th day of July the will was filed. On that day Mr. Rose was out of town and did not call at the office of the register of wills, but, learning through the papers that the will had been filed, called the following day, and it was then for the first time that he learned of the probate of the will and of an endorsement or statement on the back of the will over the initials of Judge Block, "No notice given next of kin; said to be out of State." This statement rather surprised him, but upon seeing Mr. Didier thereafter did not tell him of the statement or endorsement upon the will, but told him of the probate of the will and talked with him about his relationship to the deceased. Mr. Didier, as said by Mr. Rose, seemed to know well his relation to Miss Crawford, but did not know the relation of others to her, if there were other relatives. Later, finding he was making little progress in his investigations, he told Mr. Didier of the above-mentioned endorsement upon the will, and he was then directed by the appellant to go to Delaware to investigate there. He went to Wilmington, Delaware, this as he states was late in July, and called on a Mr. Evans, whom he knew to be the counsel for certain relatives of Miss Crawford in Delaware, and with whom he had corresponded at the time the lunacy proceedings (hereinafter referred to) were pending. Mr. Evans was away from home, but had left his business in the hands of a Mr. Hyser. Mr. Rose and Mr. Hyser called on the Misses Crawford, relatives of the deceased, but as neither he nor Mr. Hyser was known to them "they were loath to talk", and his visit to them was unsatisfactory, although, as he states, "we did *glean* some information from them". Neither Mr. Didier nor Mr. Rose, his counsel, in their testimony disclosed any further effort made by them to acquire information from the Misses Crawford or to acquire information from any other source. It is true, Mr. Rose stated in his examination that he made a careful investigation, but neither he nor Mr. Didier gives the name of a single individual from whom they attempted to acquire this information either by personal interview or correspondence.

If anything more was done by them the record does not disclose it.

We gather from the testimony of Mr. Rose that his visit to the Delaware relatives was unsatisfactory and unimportant in its results, for, as he states, the parties were loath to talk. This information, received in July, which, so far as the record discloses, was the only information received by them in their investigation. This was within thirty days from the time of the passage of the order complained of and within thirty days from the discovery of the passage of the order or the fraudulent acts complained of, and yet the petition was not filed for more than two months thereafter and nearly three months after the passage of the order. We think the petitioner failed to exercise the degree of diligence that was required of him.

In addition to what we have said as to the want of diligence required of the appellant, we are also of the opinion that the evidence offered does not establish the allegations of fraud charged against the appellee. The alleged fraud, as claimed by the appellant, arises from the alleged misrepresentations made by the appellee at the time the paper writing was offered and admitted to probate . When it was offered for probate he was asked by the Court if the parties had been notified, to which he replied "that he knew of no relatives to notify, that he had never heard' of any relatives of Miss Mary Virginia Crawford, but had understood from her that she had no relatives other than some distant cousins residing in the State of Delaware."

The petitioner charges that these representations were false and that the appellee knew them to be false, inasmuch as he knew that the petitioner, a resident of Baltimore, was a relative of the decedent, and that the representations were made in order to obtain the advantages that would accrue to him and those interested in sustaining the will by having it admitted to probate.

This charge of fraud, therefore, depends upon the truthfulness of the allegation that the appellee knew the peti-

tioner to be a relative or one of the next of kin to the decedent. To sustain this charge, they offered evidence showing the connection of the appellee with lunacy proceedings, directed against the decedent, instituted by the petitioner as her cousin, and it is upon the appellee's connection with the case, and the opportunities thereby afforded him to know of the relationship existing between the appellant and the decedent, that the appellant chiefly relies in sustaining his allegations that the appellee had knowledge of such relationship.

The record discloses that the writ *de lunatico inquirendo* was issued on the 10th day of June, 1908, upon the order of JUDGE HEUISLER, sitting in the Circuit Court. Before serving the writ, the sheriff, learning that the appellee was counsel for Miss Crawford, told him over the 'phone of its issuance, and also that the petition in the case had been filed by the appellant, and when asked by Mr. Carr what physician had certified to her alleged condition of lunacy, stated that no certificate had been procured. Mr. Carr at once called upon the Court, and, after conferring with him, the attorneys who had filed the petition were sent for and a conference was had in which the Court and the attorneys upon the respective sides participated. This conference resulted in the Court directing the clerk who had issued the writ to withdraw it. It was then determined and agreed upon that the Court should appoint three physicians to examine the mental condition of Miss Crawford. The Court appointed Dr. Charles G. Hill, of Mt. Hope Retreat; Dr. Clark, of the Springfield State Hospital, at Sykesville, and Dr. Streett, her family physician. At the request of the attorneys for the petitioner these names were submitted to the petitioner himself for his approval. These physicians, however, were objected to by the appellant and his counsel because, as the appellant testified, they thought they would be prejudiced against their case, and obtained particularly to Dr. Hill because they said he was too intimate with Dr. Streett, her family physician. Dr. Hill was then withdrawn

and Dr. Herring, secretary of the State Lunacy Commission, was substituted for him. No other changes were made. The question then arose as to who should compensate these physicians for the services that they were to render, and the Court held that the petitioner should be responsible therefor. Thereafter, the proceedings were not further prosecuted, and were in that sense pending at the time of the death of the testatrix.

The appellee, though acting on behalf of Miss Crawford in that case, denied that he ever knew that the appellant was acting as the *cousin* of Miss Crawford in filing the petition. He knew the purpose and the general character of the petition and by whom it was filed, from what had been told him by the sheriff, and until there was an examination and report made by the physicians appointed by the Court to examine the mental condition of Miss Crawford, there was no especial occasion for reference to, or examination of the papers in the case by him, and this examination by the physicians was never made.

It is true that the attorneys for the petitioner in that case testified that the papers were in Court at the time of one or more of the conferences at which the appellee was present, but neither of them testified that he examined or read them or had them in his possession, and when asked if they had given a copy of the petition to him, they could not recall that they had. We do not think, in view of the facts and circumstances of the case and the explanation made by him, he should be charged with knowing the relationship existing between the petitioner and Miss Crawford, as appearing from the papers in the lunacy proceedings, simply because of his connection therewith, in the face of his uncontradicted denial of any knowledge of such fact.

The codicil, prepared by the appellee, was executed by the decedent shortly after the institution of the lunacy proceedings and by it the bequest in the original will to the appellant was cancelled. The appellee testified that the request made of him to draw the codicil and the directions

given him in connection therewith were transmitted to him by letter through the mail, and that he did not see and talk with Miss Crawford in relation thereto; that he was not present at the execution of the paper and that she had never on any occasion, other than the one referred to at or about the time of the drawing of the original will, made any reference to her relatives.

We will also add that the evidence offered in support of the allegation that the appellant is one of the next of kin to the decedent, is not at all convincing. The petitioner, in his petition, not only alleged under oath, that none of the relatives of the said deceased are more closely related than he, but also that *none* are as *nearly related,* while in his testimony he stated that he did not know of any relatives of the deceased more nearly related to her than himself and did not think any existed.

From what we have said, we do not think the Orphans' Court erred in passing the order appealed from. We will, therefore, affirm the order.

> *Order affirmed, with costs to the appellee.*