WATKINS, Administrator c. t. a *v.* BARNES

[No. 57, October Term, 1953.]

*Decided January 11, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Jerome Offutt* and *Benjamin B. Rosenstock,* for appellant.

*Robert E. Clapp, Jr.,* for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Philip C. Watkins, a farmer and bank director in Montgomery County, is appealing here from an order of the Orphans' Court of Frederick County revoking the probate of the will of Adele H. Kreh, deceased, and the letters of administration *cum testamento annexo* which the Court had granted to him on her estate.

On Sunday morning, December 7, 1952, Mrs. Kreh and her husband, Arthur T. Kreh, were found dead in their apartment in Frederick by Mrs. Edward M. Lasseter, one of Kreh's nieces. Mrs. Lasseter called the coroner and then phoned the news of the tragedy to appellant, Mrs. Kreh's first cousin once removed, who resides near Germantown, Appellant came to Frederick on the same day, and on the following day he made the funeral arrangements.

On December 15 Mrs. Kreh's will was found in a safe deposit box in a Frederick bank, and it was delivered to Harry D. Radcliff, Register of Wills for Frederick County. By this will Mrs. Kreh left her whole estate to her husband and appointed him executor. Later that day appellant, accompanied by W. Jerome Offutt, his attorney, applied for letters of administration C. T. A. In accordance with the regular procedure, appellant submitted to the Register of Wills an information report, which stated that Mrs. Kreh died on December 7, 1952, and that he, as her first cousin once removed, was her next of kin. He then filed an application for letters of administration C. T. A. on Mrs. Kreh's estate.

On December 16 the Orphans' Court admitted the will to probate and granted letters to appellant with the direction that he give bond to the State of Maryland in the sum of $1,000. He thereupon proceeded to administer upon the estate. He put Mrs. Kreh's jewelry in a safe deposit box, gave notice to creditors, and filed the inventories in the estate.

On February 2, 1953, Bessie A. Barnes and Beulah B. Weaver, residents of the City of Washington, and

Theodore Barnes, Jr., of Miami Beach, Florida, and Julian F. Barnes, of Southern Pines, North Carolina, petitioned the Court to revoke the letters granted to appellant and to give such other and further relief as the nature of the case may require. They alleged in their petition that they were Mrs. Kreh's first cousins of the half blood, and were her next of kin; that the Court had granted the letters upon appellant's misrepresentation that he was her only next of kin; and that no notice had been given them and they had no knowledge of the grant of letters until January 5, 1953.

Appellant admitted that he had misinformed the Court by representing himself to be Mrs. Kreh's next of kin, but he claimed that he had made the false statement innocently. He acknowledged that petitioners, as Mrs. Kreh's first cousins of the half blood, were her next of kin.

The Maryland Testamentary Act gives priority to first cousins of the half blood over first cousins once removed in the following section in the order of distribution: "After children, descendants, father, mother, brothers and sisters of the deceased, the child or children, grandchild or grandchildren or brothers and sisters of the deceased and their descendants, all collateral relations in equal degree shall take, and no representation amongst such collateral shall be allowed, and there shall be no distinction between the whole and half blood." Code 1951, art. 93, sec. 140.

The Act also gives priority to first cousins of the half blood over first cousins once removed in the right to administer upon an estate. Secs. 25, 27.

It is the law in Maryland that when a will is exhibited to the Orphans' Court for probate, and it appears that reasonable notice of the time of exhibiting it has been given to such of the next of kin as might conveniently be served therewith, and no caveat has been filed against it, the Court shall proceed to probate it. But where none of the next of kin attend, and it appears that no notice has been given, the Court may either direct sum-

mons to the next of kin, or some one or more of them, to appear to show cause why the will should not be probated, or direct such notice to be given in the newspapers or otherwise as the Court may think proper, and if no objection is made or caveat entered, the Court may take the probate, but if objection is made, the Court shall determine according to the testimony produced on both sides. Code 1951, art. 93, secs. 374, 375.

Thus, where no notice has been given and none of the next of kin appear, the Court is not required to notify all of the next of kin, but only one or more of them, and the notice may be given either by summons or newspaper publication or in any other way the Court may think proper. *Pilert v. Pielert*, 202 Md. 406, 96 A. 2d 498. However, Sections 374 and 375 of Article 93 are mandatory. They contain the conditions precedent that must be fulfilled before a will can be admitted to probate. If the Court admits a will to probate without complying with the statutory requirements, the probate is invalid. *Travers v. Lavender*, 197 Md. 652.

In this case the Orphans' Court admitted the will to probate without directing a notice of any kind to be given to any of the next of kin, and none of the next of kin appeared at or before the time of probate. It is thus indisputable that the action of the Court in probating the will and granting the letters was not in accordance with the law.

It has long been established that an Orphans' Court has the power to revoke an order for the probate of a will, or for the issuance of letters of administration, passed by it improperly upon material misrepresentation, however innocently made. The right to administer justice would be seriously impaired if the Orphans' Court possessed no power to revoke a probate or letters which it had previously granted upon a mistaken state of facts. *Dalrymple v. Gamble*, 66 Md. 298, 305, 7 A. 683, 8 A. 466; *Mitchell v. McCormick*, 143 Md. 328, 332, 122 A. 245; *Silverwood v. Farnan*, 180 Md. 15, 22, 22 A. 2d 444; *Northwestern Fuel Co. v. Brock*, 139 U. S. 216,

11 S. Ct. 523, 524, 35 L. Ed. 151.

Appellant argued, however, that in this case the Orphans' Court abused its discretion. He stressed the fact that he had long been intimate with the testatrix, and that he made the arrangements for her funeral, whereas petitioners had not been intimate with her and none of them attended her funeral. He claimed that the spirit of the testimentary law is not carried out if the Court allows an estate in a case like this to remain unadministered until a genealogist makes a study of the family tree. His argument might have merit (1) if there were no misrepresentation and the family relationships were so complicated or so obscure that the services of a genealogist were necessary, or (2) if it were impossible to notify any of the next of kin in any way.

It is true that it is the policy of the Testamentary Act to promote the prompt probate of wills and the speedy administration and settlement of estates. *Barrett v. Clark,* 189 Md. 116, 54 A. 2d 128, 173 A. L. R. 988; *American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 203, 70 A. 2d 44, 18 A. L. R. 2d 1380. However, we cannot close our eyes to the fact that the Orphans' Court improperly passed orders induced by appellant's material misrepresentation. When the Register of Wills was asked at the hearing on the petition for revocation whether appellant had told him that he was Mrs. Kreh's only next of kin, he replied: "Oh, yes. * * * I asked him what possibility there might be of cousins. He said 'not to my knowledge.' He was very sincere. He said he knew of no other relatives." The Register of Wills definitely swore that prior to the probate of the will he had no knowledge that there were any other cousins, and that if he had known it, he "would have suggested somebody should be notified."

In view of these facts the Orphans' Court was justified in revoking the order for the probate of the will and the grant of letters. Justification for the order of

revocation was as unquestionable here as in *Lutz v. Mahan,* 80 Md. 233, 235, 236, 30 A. 645. In that case the Orphans' Court of Baltimore City granted letters of administration to one of the sons of the intestate upon his untrue statement that no other son was living, and subsequently the Court revoked his letters. Although the evidence indicated that the son who had been appointed was not intelligent and not acquainted with legal proceedings and evidently did not understand the questions which were asked him, nevertheless the Court of Appeals held that, since the letters ought not to have been granted, justice demanded that they should be revoked.

Judge Bryan, in delivering the opinion of the Court in that case, gave approval to the order of revocation in the following emphatic language: "But after every allowance is made in regard to this matter, the question as to the validity of the letters remains unchanged. They were obtained by means of an untrue statement about an essential fact. Whether the deception was the result of carelessness or mistake, or was intentionally practised, the result is the same. The grant of letters stands condemned as improperly made. The deception operated as a fraud on the Register of Wills, and caused him to render an erroneous judgment. That judgment ought surely to be set aside. It is due to the integrity of legal proceedings that a determination grounded on a falsehood should not be allowed to stand. The adjudications of the law are the declarations of justice, so far as attainable by human methods, and truth is the divinest quality of justice. It would be superfluous to enumerate instances in which Courts have dealt with great severity with the different forms of fraud. Whether embodied in contracts, deeds, verdicts, decrees or judgments, it is struck down with relentless rigor."

There is no statute in this State designating the time within which a petition must be filed in order to obtain a review by the Orphans' Court of any of its own orders. Of course, when a person attacks the probate

of a will on the ground that no notice had been given to the next of kin as required by the statute, he must file his petition within a reasonable time after acquiring knowledge of the probate. The Court of Appeals has adopted the rule that, by analogy to the time within which an appeal must be taken from an order of the Orphans' Court, Rules of the Court of Appeals, rule 7, a petition to revoke the probate of a will should be filed within thirty days after the petitioner has received knowledge of the probate or such facts as would put him on inquiry that would disclose such probate. *Didier v. Carr,* 115 Md. 264, 80 A. 925; *Parker v. Leighton,* 131 Md. 407, 415, 102 A. 552; *Perrin v. Praeger,* 154 Md. 541, 550, 140 A. 850; *Kay v. Roberts,* 170 Md. 400, 184 A. 897; *Travers v. Lavender,* 197 Md. 652, 81 A. 2d 44. The Court has also adopted the rule that, by analogy to the time within which an executor must apply for letters testamentary, Code 1951, art. 93, sec. 48, a petition to revoke letters of administration should be filed within thirty days after the petitioner has received knowledge of the grant of letters or such facts as would put him on inquiry that would disclose that letters had been granted. *Burgess v. Boswell,* 139 Md. 669, 680.

Mrs. Kreh's will was admitted to probate and the letters were granted to appellant on December 16, 1952. Miss Barnes, who was over 75 years of age, testified that she had not received any knowledge of either the probate or the grant of letters until January 5, 1953. She further testified that her sister had been ill for eight months and was a patient in the Georgetown Hospital. Appellant sought to cast doubt upon the truth of her testimony. However, the Orphans' Court saw and heard her and all the other witnesses, and we are unwilling to say that the Court's findings are clearly erroneous. Moreover, the Barnes brothers testified that they had no knowledge of the probate and grant of letters until January 17, 1953. It thus appears that the petition for revocation, which was filed on February 2, 1953, was seasonably filed by the petitioners within thirty

days after they received knowledge of the probate and grant of letters.

The Legislature has provided that in appeals from the Courts of Equity and the Orphans' Courts, the awarding of costs shall be in the discretion of the Court of Appeals. Code 1951, art. 5, sec. 71. The Orphans' Court passed the orders in this case upon appellant's misrepresentation, however unintentional, and the Court, in the exercise of its undoubted power, passed an order to rectify the mistakes. Appellant, in taking the appeal from the Court's correcting order, attacked that order for his own benefit. He cannot be allowed to reduce the estate by an appeal from which the estate would not derive any benefit.

> *Order affirmed and case remanded for further proceedings, the costs of appeal to be paid by appellant individually.*