## FIRST NATIONAL BANK OF MARYLAND, EX-ECUTOR OF THE ESTATE OF MARY MAULS-BY ADDICKS *v.* WHITE

[No. 346, September Term, 1964.]

290

*Decided June 24, 1965.*

The cause was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Edwin H. W. Harlan, Jr.,* and *Roger A. Clapp,* with whom were *Frederick J. Singley, Jr.* and *Hinkley & Singley* on the brief, for appellant.

*H. Vernon Eney* and *Robert M. Thomas,* with whom was *Franklin Somes Tyng* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

We are presented with two appeals in one record. The original appeal was filed by the First National Bank of Maryland, appellant and cross-appellee, from the action of the Orphans' Court of Harford County in revoking letters testamentary granted to it in the estate of Mary Maulsby Addicks. A cross-appeal was filed by Madeleine Addicks White, appellee and cross-appellant, from so much of the ruling of the court as may purport to be or be construed to be a denial of appellee's petition for revocation of probate and a denial of her petition for letters of administration *pendente lite.*

Mary Maulsby Addicks died on January 14, 1964, survived by her husband, Lawrence, who died two days later. Under her purported last will and testament dated June 30, 1954, which for the purpose of this opinion will be hereafter referred to as "will", she left her entire estate to her husband. Other items of her will provided:

> "Third: I give no portion of my Estate, either real or personal, to my adopted daughter, Madeleine Early [appellee], who was legally adopted as my daughter by Order of the Circuit Court of Frederick County, Maryland, on July 13, 1925, in view of my previous expenditures on her behalf.
>
> "Fourth: I nominate, constitute and appoint my said husband, Lawrence Addicks, to be the Executor of this my last Will and Testament, and I direct that he be not required to give bond for the faithful performance of his duties as such Executor and I confer upon him the power to nominate a personal or corporate Executor to act in his place and stead in the Administration of my Estate.
>
> "Fifth: In the event that my said husband, Lawrence Addicks, be not living at the time of my death, *then and in that event only,* I nominate, constitute and appoint the First National Bank of Baltimore, Maryland, to be the Executor of this my Last Will and Testament, * * *." (Emphasis added.)

The husband executed a reciprocal will bearing the same date, and on July 9, 1954, addressed a letter to the First National Bank, Baltimore, Maryland, which stated in part:

"I enclose copies of reciprocal wills of my wife, Mary Maulsby Addicks, and myself from which you will note that after the death of both of us (we are both in our 76th year) the Bank is appointed Executor.

"The signed originals are in our safety deposit box at the First National Bank of Bel Air, Maryland. Mr. Albert P. Close, attorney of Bel Air and a successor to the late Frank H. Jacobs, Jr., long our local legal adviser, has been authorized to arrange for probate and your notification when the time arrives."

A copy of this letter was sent to Mr. Close. On July 21, 1954, Mr. and Mrs. Addicks sent a letter to Mrs. Lloyd Richardson, an old friend and a distant cousin of Mrs. Addicks, giving her authority to conduct matters in the interim between their deaths and the executor taking over their estates.

Following the deaths of Mr. and Mrs. Addicks, Mr. Close notified Mr. Ronald D. Ball, appellant's vice president, who is a member of the Bar and had served in its trust department since 1941, and discussed the question of the probate of their wills. Mr. Ball, Mr. Close, and Mrs. Richardson met on January 21, 1964, and prepared a petition for letters testamentary in the matter of the estate of Mrs. Addicks which indicated that the decedent was survived by her husband, and a daughter, Madeleine Early, the latter's address being given as a non-resident. Both Mr. Close and Mrs. Richardson knew that the Addicks had an adopted daughter who left home years before. The printed form of petition used in Harford County contains the allegation "that the said will has been read to the near relations". Mr. Close made no inquiries at this time as to the whereabouts of appellee, and later advised the Orphans' Court that such notice was not required by law, and the deputy register of wills agreed that this was so. The court, after reading the wills of both Mr. and Mrs. Addicks, granted probate and

indicated that appellant should be granted letters testamentary in each estate.

On the following day, Mrs. Richardson telephoned Mr. Close and told him for the first time of a resident in Bel Air who might have the address of the adopted daughter. Mr. Close obtained the address which he gave to Mr. Ball. The latter testified that he was at that time in the process of writing to notify all of the legatees mentioned in the reciprocal wills that Mr. and Mrs. Addicks had died and that later that afternoon he wrote a similar letter to Mrs. White. The letter written to all of the legatees by Mr. Ball was as follows:

"We wish to advise that Mary Maulsby Addicks died on January 14, 1964 and was survived by her husband, Lawrence Addicks, who died on January 16, 1964.

"This bank has qualified *as Executor of the estates of both Mr. and Mrs. Addicks,* and the same will be administered in the Orphans' Court of Harford County, Bel Air, Maryland. For your information we are enclosing herewith a photocopy of the Last Will and Testament of Lawrence Addicks.

"If there is any information you desire relative to the administration of the said estate, we shall be pleased if you will get in touch with us at your convenience." (Emphasis added.)

The letter written to appellee by Mr. Ball was as follows:

"We have been advised that you are the adopted daughter of Mr. and Mrs. Lawrence Addicks, and *as Executor of Mr. Addicks'* estate we enclose a photocopy of his Last Will and Testament. Mr. Addicks died on January 16th, he having survived his wife who died on January 14th.

"Administration of his estate is being made under the jurisdiction of the Orphans' Court of Harford County at Bel Air, Maryland." (Emphasis added.)

Upon receipt of the appellant's letter, appellee consulted her New York counsel, Mr. Michael C. Gray. Upon his advice,

Mr. Franklin S. Tyng of Bel Air was retained on March 7, 1964, to represent her with respect to Mr. Addicks' estate. Shortly thereafter Mr. Tyng went to see Mr. Close, the then local counsel for the appellant, to find out whether any of the legatees under Mr. Addicks' will had died, thereby causing their legacies to lapse and, as a result, whether appellee could have any possible interest. He testified that another purpose of his visit was to try to find out why Mr. Addicks disinherited his only daughter. Mr. Close testified that he had the impression that Mr. Tyng did not know of Mrs. Addicks' estate when he first came to his office, but he knew of her estate at the time he left. This impression was based on his recollection that he had told Mr. Tyng that Mrs. Addicks had left her entire estate to her husband, but Mr. Tyng testified that he did not hear Mr. Close say anything to that effect. Furthermore, Mr. Tyng stated that Mr. Close asked him on several occasions thereafter whether he intended to file a caveat in the "Addicks' estate", and that he finally responded to these verbal inquiries by letter to Mr. Close on May 7, 1964, in which he stated that he did plan to file a caveat in the estate of Lawrence Addicks.

After his conversation with Mr. Close, Mr. Tyng sent Mr. Lawrence S. Lanahan, Jr., an associate in his law firm, to the office of the register of wills to find the date of probate of Mr. Addicks' will so as to make sure that the period would not expire for filing a caveat. The deputy register of wills testified that he gave both wills to Mr. Lanahan at this time for inspection. However, Mr. Lanahan's notes admitted in evidence refer only to Mr. Addicks' will. Upon being advised by Mr. Lanahan that the date of probate of Mr. Addicks' will was January 21, 1964, and thus realizing that the time for filing a caveat would not expire until July 21, 1964, six months from the date of probate, Mr. Tyng wrote the May 7 letter to Mr. Close. During this time, Mr. Tyng was engaged in the preparation for and trial of a murder case. Following the termination of that trial he went to the register of wills' office on May 27 to check the file in the estate of Lawrence Addicks. On inspecting the index, he discovered for the first time that there were two Addicks estates, that the First National Bank was not named executor under Mrs. Addicks' will, and that her estate

was substantially larger than her husband's. He immediately called Mr. Gray in New York, who testified that Mr. Tyng was greatly excited about this new discovery. Mr. Gray told him that he should proceed to draw any necessary papers with respect to Mrs. Addicks' estate and forward them to New York for Mrs. White's signature. A petition for revocation of letters testamentary granted in Mrs. Addicks' estate was prepared and sent to Mr. Gray. He asked appellee to come to his office on June 3 without telling her of her mother's will. At that time he revealed the new discovery to her and she signed the petition. Mr. Gray stated that he had absolutely no knowledge of Mrs. Addicks' will until he received Mr. Tyng's telephone call, and that he had assumed up to then that she had no property, or that it was held as tenants by the entirety with her husband. Mr. Carroll Brown, Mr. Tyng's law partner, testified that Mr. Tyng had spoken to him on various occasions about specific matters pertaining to the estate of Mr. Addicks, but it was not until after the murder trial, that Mrs. Addicks' estate was ever mentioned.

On June 5, 1964, the appellee filed a petition to revoke the grant of letters to the First National Bank of Maryland in Mrs. Addicks' estate. On the same date the petition and caveat was filed in the estate of Lawrence Addicks. On June 25, 1964, appellee filed a petition for the revocation of the probate of the will of Mrs. Addicks. Subsequently, on July 14, 1964, appellee filed a petition and caveat to the will of Mrs. Addicks. Answers to the several petitions of the appellee were timely filed by appellant. On July 21, 1964, Mr. Close filed a petition setting forth that it was determined that his testimony would be required as a witness in the proceedings relating to the revocation of letters, probate, and the caveat; and that he could not properly represent the estate as counsel and also as a witness. The court allowed Mr. Close to strike his appearance. The matter then proceeded to a hearing, and on August 25, 1964, two of the three members of the Orphans' Court advised counsel by letter that it had ruled that appellee be appointed administratrix c.t.a. of her mother's estate because the First National Bank was "lax in not trying to locate" appellee and that

it was not named as executor in the will since Mr. Addicks was living at the time of her death.

Appellant first contends on its appeal that the Orphans' Court erred in its ruling that appellee be appointed administratrix c.t.a. of her mother's estate since it was not misled by either the allegations in appellant's petition for letters testamentary or by any representations made by it at the time the will was presented for probate. The appellee on the other hand concedes that the Orphans' Court erred in appointing her administratrix c.t.a., but contends that the court was misled by the allegations and representations made to it; that the order admitting the will to probate was invalid because she, as the only heir at law and next of kin, was not notified of the intention to present it for probate as required by law; and that under the terms of the will the bank was not entitled to letters testamentary. She further contends that under the applicable law she was entitled to be appointed administratrix *pendente lite* and should not have been appointed administratrix c.t.a.

Code (1957), Article 93, Section 378 provides:

> "If any will or codicil be exhibited to the orphans' court, and none of the near relations of the deceased shall attend, and no notice shall appear to have been given, the court may either direct summons to the said near relations, or some one or more of them, to appear on some fixed day to show cause wherefore the same should not be proved, or direct such notice to be given in the public papers or otherwise, as they may think proper; * * *."

Unless this statutory requirement is satisfied, the probate of a will is invalid and must be revoked. The purpose of this notice is to provide a reasonable time within which one, who would take if there were no will, may object to its admission to probate or file a caveat to the will before probate. *Travers v. Lavender*, 197 Md. 652, 81 A. 2d 44; *Perrin v. Praeger*, 154 Md. 541, 140 Atl. 850. In the instant case, appellee was the only surviving heir at law and next of kin of her mother at the time of probate, and therefore was a person entitled to file a caveat

to the will. *Senk, Executrix v. Mork,* 212 Md. 413, 129 A. 2d 675. Appellant in its brief concedes that appellee received no prior notice of its intention to offer Mrs. Addicks' will for probate but denied appellee's allegation that it committed certain misrepresentations at the time of probate.

Appellant's sworn allegation in the petition for letters testamentary that it was the executor named in Mrs. Addicks' will is incorrect. Item fourth of the will appointed Mr. Addicks as executor if he survived his wife, which he did, and item fifth appointed appellant as executor in the event Mr. Addicks predeceased Mrs. Addicks "and in that event only." Mr. Ball testified that neither he nor Mr. Close called the provisions of item fifth of the will to the Orphans' Court's attention at the time of probate. He further testified that Mr. Addicks' letter of July 9, 1954, to the appellant was presented to the court as evidence of Mrs. Addicks' intention that the bank was to serve as executor. Mr. Close, on the other hand, stated that he had advised the court that under item fourth of the will, Mr. Addicks had been named as executor, but that since he was dead and had been given power to name an alternate executor, his letter to the appellant ten years earlier should be considered an exercise by him of said power. Neither Mr. Ball nor Mr. Close maintained at the probate hearing that the will itself named appellant as executor, or pointed out to the court that appellant's sworn statement in its petition was not in accordance with the language of the will. We are of the opinion that had the appellant thought that it was named executor in Mrs. Addicks' will, it would not have been necessary to present her husband's 1954 letter to the court. This letter was not signed by Mrs. Addicks nor executed as a testamentary instrument. It is a fundamental principle that where the language of a will is plain and unambiguous, no extrinsic evidence is admissible to show that the testator's intention was different from that which the will discloses. *Shellady, Inc. v. Herlihy, Ex'r,* 236 Md. 461, 204 A. 2d 504; *Jones v. Holloway,* 183 Md. 40, 36 A. 2d 551. The wording of the fourth item of Mrs. Addicks' will indicates that her husband should exercise his power to appoint an alternate executor in light of the circumstances existing at the time of her death. Thus, if he could not serve as executor

himself, he could have named an individual or a corporate executor other than the First National Bank. Otherwise, the will itself would have named the bank as alternate executor in the event her husband was unwilling or unable to serve. An examination of the will shows that it is completely silent as to who should act as executor in the event Mr. Addicks survived Mrs. Addicks, but died before probate without naming an alternate executor. Had appellee been given an opportunity to appear at the probate hearing, she would have been entitled to assert her right to letters of administration *pendente lite* prior to filing a notice of caveat, or letters of administration c.t.a. if she preferred not to file a caveat. We hold that appellant's failure to notify appellee, and its allegation in the petition for letters testamentary that it was the executor named in the will, and that the will had been read to the near relations of the decedent thus induced the order admitting the will to probate, deprived appellee of a valuable right to file a caveat prior to probate and to administer the estate. *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295; *Lutz v. Mahan,* 80 Md. 233, 30 Atl. 645.

The appellant argues that the appellee or her counsel of record knew or in the exercise of reasonable diligence should have known of the probate of Mrs. Addicks' will more than thirty days prior to the filing of her petition to revoke letters and probate. There is no statute designating the time within which a petition to revoke probate or letters must be filed. When a person attacks the probate of a will on the ground that no notice had been given to the next of kin, he must file his petition within a reasonable time after acquiring knowledge of the probate. We have adopted the rule that a petition to revoke the probate of a will should be filed within thirty days after the petitioner has received knowledge of the probate or such facts as would put him on inquiry that would disclose such probate. *Gessler v. Stevens,* 205 Md. 498, 109 A. 2d 74; *Watkins v. Barnes, supra; Hunter v. Baker,* 154 Md. 307, 141 Atl. 368. The purpose of the rule is to prevent unnecessary delay in the settlement of estates and is not to be applied strictly when there are "unusual circumstances," such as in *Gessler v. Stevens, supra,* or when the probate was acquired through material misrepresentation amounting to fraud. *Didier v. Carr,*

115 Md. 264, 80 Atl. 925. Here, the will was submitted for probate without anyone making any attempt to locate and notify appellee. The letter finally sent to her by appellant advised her that it was administering her father's estate but did not mention its administration of her mother's estate, nor did it enclose a copy of her will in which the bank was not designated as executor. Had the appellant advised appellee in the letter, as it did all the other interested parties, that Mrs. Addicks had left a will, and that it had been appointed executor, then appellee would have been put on notice and bound by the thirty day rule. However, even assuming the thirty day rule to be strictly applied, the record is clear that Mr. Tyng did not have actual knowledge of Mrs. Addicks' will until May 27, 1964. Appellee received this information on June 3 and the petition to revoke letters testamentary was filed on June 5, within the thirty day period. In view of the misstatements by the appellant to the Orphans' Court, its failure to give appellee notice under the statute, and the incomplete letter sent to her, we hold that the court below should have granted appellee's petition to revoke the letters testamentary and the probate of her mother's will.

We find that appellant's next contention has no merit. It claims that appellee has taken the following steps: first, she had petitioned the Orphans' Court to revoke letters granted to appellant since she is the one to administer the estate under the law; second, she later petitioned the same court to revoke the probate of the will; and finally, she filed a petition and caveat alleging that the will is invalid. Thus appellant argues that appellee is not permitted to adopt inconsistent positions and that under the law she bound herself to the relief she first sought, that is, the revocation of the letters granted to appellant. She limited her initial petition of June 5 to a prayer that appellant be required to show cause why its letters testamentary should not be revoked. Pending a determination whether or not to file a caveat, she refrained from applying for letters of administration in any capacity. On June 25, 1964, appellee filed her petition to revoke probate, but still did not apply for letters of administration. Upon filing her petition and caveat on July 14, 1964, she did pray that letters of administration *pendente lite* be granted to a suitable person, and on August 6, 1964, she

applied for letters *pendente lite* in her own name. A petition to revoke probate is not inconsistent with a petition to revoke letters because revocation of probate necessarily includes revocation of letters. *Gessler v. Stevens, supra.* We hold that the filing of appellee's petition to revoke the letters testamentary granted to the bank without an accompanying application for letters of administration did not estop her from thereafter seeking the additional relief of revocation of probate.

On her cross-appeal appellee contends that she is entitled to letters of administration *pendente lite.* We agree. The Orphans' Court found and held that she was entitled to administer the estate, but appointed her administratrix c.t.a. of her mother's estate. Because Mrs. Addicks' will did not name an executor other than her husband, and since he, having survived her, was the person to whom the entire estate was bequeathed, and since he was not living at the time of probate, appellee, as the sole surviving heir and next of kin of her mother, is the person who would be entitled to letters of administration by law as in the case of intestacy, and thus is the only person entitled to letters of administration *pendente lite.* Code (1957), Article 93, Section 75; 1 Sykes, *Probate Law and Practice,* Section 362.

In the briefs of both parties and at oral argument there was considerable discussion of whether the order for probate of the will was considered and acted upon by the Orphans' Court while in session, or by the register of wills in case it was in recess as provided by Code (1957), Article 93, Section 371. We need not consider this question because, as we have already indicated, the will was, under the circumstances of this case, improperly ordered to be admitted to probate and it makes no difference whether that action was taken by the Orphans' Court or by the register of wills.

For the reasons stated we will affirm the action of the Orphans' Court in revoking appellant's letters testamentary but will reverse its action in refusing to vacate the order admitting the will to probate and granting to appellee letters of administration c.t.a.; and will remand the case for the passage of an

order revoking the probate of the will and granting letters of administration *pendente lite* to appellee.

> *Action of the Orphans' Court affirmed in part and reversed in part; and case remanded for the passage of an order in accordance with this opinion. Appellant to pay the costs.*